UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                      Chapter 11
                                                                                  Case No. 1-14-40786-nhl
Etienne Estates at Washington LLC,

        Debtor.

-----------------------------------------------------------X

# OPINION AND ORDER ON MOTION TO CORRECT

APPEARANCES:

| | |
|---|---|
| Kevin Nash | Mark A. Frankel |
| Goldberg Weprin Finkel Goldstein LLP | Backenroth Frankel & Krinsky, LLP |
| 1501 Broadway, 22nd Floor | 800 Third Avenue |
| New York, NY 10036 | New York, NY 10022 |
| *Attorney for the Debtor* | *Attorney for the Mortgagee* |

NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

1

By motion dated August 23, 2016, ECF No. 179, Etienne Estates at Washington LLC ("the Debtor") has asked this Court to correct, pursuant to Federal Rule of Civil Procedure 60(a),[1] certain mathematical errors in its Decision on Objection to Claim and Plan Confirmation ("the Decision"), ECF No. 165. As set forth more fully below, the Court grants the Debtor's motion in part, and denies in part.

## BACKGROUND

As is relevant here, the Decision fixed the claim of secured creditor JJAM Capital LLC ("JJAM") in the amount of $2,726,396.97, and permitted the Debtor to tender $779,764.83 of that amount to cure its default on, and reinstate the terms of, the Consolidated Note.[2] *See* Decision 1, ECF No. 165. The Court found that JJAM's total claim was comprised of the following amounts:

a) principal balance of $1,786,762.62;

b) arrears under the Consolidated Note of $106,726.55;

c) interest accrued on the Forbearance Agreement of $442,557.39;

d) $145,180.55 due for property tax advances;

e) $5,095.79 due for water advances;

f) $9,629.18 due for insurance payment advances;

g) $214,089.74 due in attorney's fees;

---

[1] Rule 60(a) is made applicable to this case through Federal Rule of Bankruptcy Procedure 9024. Fed. R. Bankr. P. 9024.

[2] The Consolidated Note was executed between the Debtor and First Central Bank, JJAM's predecessor in interest, on September 28, 2006. The Debtor defaulted on that agreement in late 2007, prompting First Central Bank and the Debtor to enter into a Forbearance Agreement, which became effective on June 1, 2008. The Debtor defaulted on that Agreement in 2009. For a full discussion of the Court's findings with respect to the Documents discussed herein, as well as further background information, see the Decision 2–6, ECF No. 165.

h) $16,391.15 due for late fees through and after the default on the Forbearance Agreement; and finally

i) interest on the above advances, which were to be added to the principal balance noted above, and would accrue interest as a part of that amount.

From those amounts, the Court determined that the Debtor could reinstate the terms of the Consolidated Note by paying the Consolidated Note arrears (item (b)), interest accrued on the Forbearance Agreement (item (c)), attorney's fees (item (g)), and the late fees (item (h)).

## DISCUSSION

The Debtor now seeks to have five corrections made, all of which it contends are based on errors "relat[ed] to mathematical calculations, rather than . . . any of the Court's rulings of law." Mot. to Corr. 2, ECF No. 179. To effect such changes, the Debtor has invoked Rule 60(a), entitled "Corrections Based on Clerical Mistakes; Oversights and Omissions," which, in essence, permits a court to correct certain "mechanical" errors apparent on the face of a decision. *McNamee v. Clemens*, 09 CV 1647(SJ)(CLP), 2013 WL 3968740, at *2 (E.D.N.Y. July, 31, 2013) (quoting *In re Merry Queen Transfer Corp.*, 266 F. Supp. 605, 607 (E.D.N.Y. 1967)); *see* Fed. R. Civ. P. 60(a). The Rule provides: "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). The Rule is therefore not directed at errors of deliberate judgment or reasoning, *see McNamee*, 2013 WL 3968740, at *2, but rather at those of inadvertence, *see In re Marc Rich & Co. A.G. v. United States*, 739 F.2d 834, 836 (2d Cir. 1984). Once identified, this latter variety of error may be corrected under Rule 60(a) when it obscures

or misstates a decision's intended meaning. *See Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498, 504–05 (2d Cir. 2007) ("[A] Rule 60(a) motion is appropriate 'where the judgment has failed accurately to reflect the actual decision of the decision maker to award such interest.'"). In other words, where a decision does not reflect a court's intent because of some oversight, the decision may be corrected pursuant to 60(a). *Id.*

Importantly, as the standard for revision under Rule 60(a) is a court's assessment of its initial intent, the Rule may be applied at a court's discretion. *McNamee*, 2013 WL 3968740, at *3 ("As the standard for clarification depends on the Court's subjective assessment as to whether or not its own intention was reflected accurately in the record, the Court will only apply Rule 60(a) where it deems necessary." (quoting *Ferguson v. Lion Holding, Inc.*, 02 CIV 4258(PKL), 2007 WL 2265579 (S.D.N.Y. Aug. 6, 2007)). In exercise of such discretion, however, a court must be sure only to correct errors, and not to alter or amend the relief originally contemplated by the judgment. *See Webb*, 473 F.3d at 505.

*Overcharges in Interest from November 2006 – May 2008*

Turning now to the Debtor's particular claims of error, the first is that the Court overstated the amount of arrears due under the Consolidated Note. *See* Mot. to Corr. 2, ECF No. 179. It claims that the Court's figure of $106,726.55 is too high because interest was originally overcharged under the Consolidated Note, and that the Court overlooked these excess charges when calculating the total arrears. The Debtor argues that these oversights occurred in two related instances, which will be considered in turn.

4

First, the Debtor points out that, according to the Decision, it is entitled to a credit of $2,106.08 for incorrectly charged interest, but the Decision's $106,726.55 arrears figure does not take that credit into account. *See id.* at 2; Decision 10, ECF No. 165.

The Debtor is correct on this issue. On page ten of the Decision, the Court wrote of the $106,726.55 arrears figure: "This number accounts for the sixteen payments of $2,425.60 tendered against the arrears under the Forbearance Agreement, and an adjustment offered by JJAM in the amount of $2,106.08 for miscalculated interest with a 360-day year under the HELOC." Decision 10, ECF No. 365. The $106,726.55 arrears figure does not include the $2,106.08; the Court's language in the Decision shows, however, that the reduction should have been included. Thus, to the extent that this deduction was originally intended but not incorporated, this is a permissible correction under Rule 60(a). *See Webb*, 473 F.3d at 505. The arrears figure under the Consolidated Note should be $104,620.47.

The Debtor's second claim relating to overlooked, overcharged interest rates is that the arrears should be further reduced because "the monthly overcharges were not correctly calculated by JJAM in the first place since JJAM proposed their credit based on a flat rate of 5% interest, although the Debtor was paying interest [] as high as 10%." Mot. to Corr. 3, ECF No. 179. The Debtor then points to overcharges assessed from November 10, 2006 to May 31, 2008. These overcharges, the Debtor asserts, entitle it to a further reduction in arrears of $11,687.95. *Id.*

The change that the Debtor requests here is beyond the scope of a Rule 60(a) motion. The Debtor is right to assert that the Court recognized certain interest overcharges during the period in question. Indeed, in footnote five of the Decision, the

5

Court expressly found that interest was overcharged for the months of October and November of 2007, and February and March of 2008. Decision 11 n.5, ECF No. 165. The Court then invited the parties to submit supplemental affidavits on the issue so that it could determine a corresponding reduction to the total arrears. *See id.* A submission based on those four months would therefore be perfectly in line with the Court's request. This, however, goes beyond those four months, and asks for an amendment based on almost two years of overcharges. Far from issuing a correction to a simple oversight, for the Court to entertain this change would be to "alter or amend the relief contemplated by the judgment." *Webb*, 473 F.3d at 505. Such amendment would be beyond 60(a)'s scope, and the Court declines to further amend the arrears on the Consolidated Note.

*Overcharged Late Fees Under the Consolidated Note*

The Debtor's second allegation of error is related to the first—namely, that because interest was overcharged during the period from November 2006 to May 2008, the 2% late fees were assessed on inflated monthly payments, and therefore must be reduced. *See* Mot. to Corr. 3, ECF No. 179. The Debtor asserts that, in light of this error, it is entitled to a credit of $221.16. JJAM's response to this claim indicates its willingness to accept a reduction along these lines, but it further asserts that the reduction should be $123.68, rather than $221.16. Resp. to Mot. 2, ECF No. 184.

Despite JJAM's apparent acceptance of this change in some form, this sort of alteration is also outside of 60(a)'s scope. For the same reasons that the amendments to interest discussed in the previous section would be inappropriate, so would further adjustments based on those proposed amendments. This request is denied.

*Post-Forbearance Agreement Interest*

The Debtor's third claim relates to the calculation of interest under the Forbearance Agreement. The Debtor explains that the Court reduced the principal balance due under the Forbearance Agreement by $935.88, which represented a payment made by the Debtor against that balance in June of 2009, but which was never credited. The Debtor then points out that, after finding that this deduction was appropriate, the Court nevertheless did not use the reduced principal amount in calculating interest payments due. The Debtor reasons that monthly interest payment calculations should have reflected that $935.88 credit, and would therefore amount to $7,444.69, instead of $7,448.59. This change would in turn reduce the total interest due under the Forbearance Agreement by $277.94. JJAM's response to this point is that it calculates the difference to be slightly greater—that the change would actually entitle the Debtor to a credit of $325.38.

JJAM's acquiescence notwithstanding, the Court must decline this invitation to revise the Decision. As written, the Decision provides that changes to the principal amount having an impact on interest were to be incorporated *after* the Consolidated Note was cured. Such changes were not to be applied retroactively. Thus, interest on the new principal balance of $1,786,726.62 was to start accruing upon the Consolidated Note's reinstatement; any interest that had accrued under the Forbearance Agreement through the agreed cutoff date of May 18, 2015 ("the Cutoff Date") was to be based on the principal balance as set forth in the Forbearance Agreement.

Consistent with this manner of calculation, the Court explained in its decision that the advances made by JJAM were to be capitalized, and would accrue interest as a part of

the principal balance. *See* Decision 19, ECF No. 165. Like the $935.88 credit, the Court anticipated that this change would be made after the Consolidated Note was reinstated, despite the fact that the advances were made during the relevant period here—between the default on the Forbearance Agreement and the Cutoff Date.

None of this is to say that it would have been impossible or incorrect for the Court to have applied these changes retroactively. But, had the Court calculated interest in this way, it would have had to do so for both the payment made by the Debtor and the advances made by JJAM. Using that method, any credit owed the Debtor that would reduce the cure amount would be completely eclipsed by the $29,242.02 in interest owed based on the advances. *See* Attach. to Resp. to Mot, ECF No. 184. This, however, was not what the Court chose to do.

Accordingly, because the method of calculation that the Debtor describes here is not a correction in accord with the Court's approach, but a different method altogether, this request must be denied. *Dudley Ex rel. Estate of Patton v. Penn-Am. Ins. Co.*, 313 F.3d 662, 671 (2d Cir. 2002) (Sotomayor, C.J., concurring) ("A motion to correct a clerical error under Rule 60(a) must seek to conform the written judgment to the judgment actually rendered by the court; it cannot seek to alter the substantive rights of the parties."). For the same reason, the Court denies JJAM's request in its response papers that interest on advances be added to the Forbearance Agreement interest total.

*Late Fee Reduction from Forbearance Agreement to the Cutoff Date*

The Debtor's fifth claim of error—that the 2% fees owed for late or missed payments under the Forbearance Agreement should have been reduced—is comprised of three related claims. Considering each in turn, the Debtor first claims that the late fees

were improperly calculated using the Forbearance Agreement's terms, rather than those of the Consolidated Note. The Debtor explains that the latter document's terms should have applied upon the Debtor's default under the Forbearance Agreement because, as the Court found, the Consolidated Note controlled from that point forward. Mot. to Corr. 4, ECF No. 179.

With this claim, the Debtor has pointed out an error correctable under Rule 60(a). The Court indeed found in the Decision that the Consolidated Note applied once the Debtor defaulted on the Forbearance Agreement. *See* Decision 9, ECF No. 165. For this aspect of the Decision to be consistent with that finding, the late fees charged from the moment of default forward should have been assessed under the Consolidated Note's terms. That being the case, as the Debtor defaulted on the Forbearance Agreement on June 1, 2009, late fees of 2% from that date to the Cutoff Date should have been assessed on the $7,448.59 monthly payment, rather than on the $9,874.19 figure from the Forbearance Agreement.

This is not to say, however, that late fees should have been assessed only on the 72 months between default and the Cutoff Date, which is the crux of the Debtor's second claim. Mot. to Corr. 4–5, ECF No. 179. To the contrary, the Court's assessment of late fees on 83 months was the result of its finding that, in addition to the late fees appropriately charged after the Debtor's default, late fees should also be charged for each month under the Forbearance Agreement. *Compare* Forbearance Ag. ¶ 3(a) (requiring payments on the first of each month) *with* JJAM's Prop. Findings of Fact & Concl. of Law 20–21, ECF No. 14 (showing payments made after the first of each month). Thus,

the Decision reflects the Court's intent with respect to this issue, and it will not be altered here.

The Debtor's final claim is that the late fees assessed under the Consolidated Note's terms should be assessed on the reduced sum of $7,444.69, rather than $7,448.59, based on the retroactive application of the $935.88 credit against the principal balance. However, as described above, the Court is not at liberty to change its method of calculating interest under these circumstances, and in turn is not at liberty to make this related change.

In sum, the Court makes following alteration with respect to late fees set out in the Decision: fees from the first late payment under the Forbearance Agreement in July of 2008 to the last in May of 2009 should be assessed under the Forbearance Agreement's monthly payment of $9,874.19, while the late fees from default to the Cutoff Date should be assessed on the Consolidated Note's $7,448.59 figure.

*Uncredited Adequate Protection Payments*

The Debtor's final claim of error was that the Court failed to include in its calculation of interest on the Forbearance Agreement a final adequate protection payment made on the Cutoff Date. Rather than the $60,000 credit against the interest described by the Court, *see* Decision 12, ECF No. 165, the Debtor claims an entitlement to $6,500, *see* Mot. to Corr. 5, ECF No. 179.

Though the Court does not deny that this additional payment was made on May 18, 2015, the record before it at the time indicated that the parties had agreed to a credit of $60,000. Moreover, JJAM has indicated that it intends to continue crediting all adequate protection payments against the Debtor's total indebtedness, making the

inclusion of the additional $5,000 unnecessary. As the Court has always understood that all adequate protection payments would be credited against the arrears, the inclusion or exclusion of one payment does not alter the Court's intent, and such a correction need not be made. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994) ("An error in a judgment that accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a).").

## CONCLUSION

Based on the above discussion, the Debtor's motion to correct the Decision of this Court is granted to the extent that the arrears figure under the Consolidated Note should be corrected to $104,620.47; and that late fees under the Forbearance Agreement should be corrected such that fees charged from the first late payment under the Forbearance in July of 2008 to the last in May of 2009 should be assessed under the Forbearance Agreement's monthly payment of $9,874.19, while the late fees from default to the Cutoff Date should be assessed on the Consolidated Note's $7,448.59 figure. The remainder of the Debtor's motion is denied, as is JJAM's request for retroactive interest on its advances.

**IT IS SO ORDERED**

Dated: December 20, 2016  
Brooklyn, New York

**Nancy Hershey Lord**  
**United States Bankruptcy Judge**