1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4

5    In the Matter of:

6

7    ETIENNE ESTATES AT WASHINGTON DC,    Case No. 14-40786 (NHL)

8

9           Debtor.

10

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13

14

15                   U.S. Bankruptcy Court

16                   271-C Cadman Plaza East

17                   Brooklyn, NY 11201

18

19                   April 24, 2014

20                   3:12 PM

21

22

23    B E F O R E :

24    HON NANCY HERSHEY LORD

25    U.S. BANKRUPTCY JUDGE

1    Hearing re:  [7] Status conference

2

3    Hearing re:  [10] Motion for 2004 Examination filed by Mark

4    A. Frankel on behalf of First Central Savings Bank

5

6    Hearing re:  [11] Motion for relied from stay fee amount

7    $176.  Filed by Mark A. Frankel on behalf of First Central

8    Savings Bank

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Jamie Gallagher

1   A P P E A R A N C E S :

2   GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP

3        Attorneys for the Debtor

4        1501 Broadway

5        22nd Floor

6        New York, NY 10036

7

8   BY:  J. DONOVAN, ESQ.

9        KEVIN NASH, ESQ.

10

11  BACKENROTH FRANKEL & KRINSKY LLP

12        Attorney for First Central Savings Bank

13        800 Third Avenue

14        11th Floor

15        New York, NY 10022

16

17  BY:  MARK A. FRANKEL, ESQ.

18

19  CORITSIDIS & LAMBROS, PLLC

20        Attorney for State Court Foreclosure Counsel

21        46 Trinity Place

22        4th Floor

23        New York, NY 10006

24

25  BY:  JEFFREY GANGEMI, ESQ.

1    UNITED STATES DEPARTMENT OF JUSTICE

2        Attorney for the U.S. Trustee

3        201 Varick Street

4        Suite 1006

5        New York, NY 10014

6

7    BY:  NAZAR KHODOROVSKY, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE CLERK:  Matter numbers 31 through 33 in the

3    case of Etienne Estates at Washington LLC.

4              THE COURT:  Appearances, please.

5              MR. FRANKEL:  Mark Frankel, Backenroth, Frankel &

6    Krinsky, attorneys for First Central Savings Bank.  And with

7    me is Jeff Gangemi, who is State Court Foreclosure and Real

8    Estate counsel.

9              MR. GANGEMI:  Good afternoon, Your Honor.

10             THE COURT:  Good afternoon.

11             MR. KHODOROVSKY:  Nazar Khodorovsky, trial

12   attorney with the U.S. Trustee's office.

13             MR. DONOVAN:  Ted Donovan and Kevin Nash, Goldberg

14   Weprin for the debtor.  With us is Johanna Francis (ph),

15   principal.

16             THE COURT:  Okay.  So we have a status conference,

17   we should probably should do first.  And then we have a

18   motion for 2004 exam, for which there's been a limited

19   response or objection.  And then we have a contested motion

20   for relief from stay.

21             So why don't we begin with the status.

22             MR. NASH:  Your Honor, in terms of the overall

23   status of the case, this property, although it's styled in

24   the name of Etienne Estates at Washington LLC, that's more

25   historic than anything else.  This is where Ms. Francis

1    lives with her son.  And we filed the Chapter 11.  The

2    property is subject to dispute with the lenders.

3              THE COURT:  Historic?  Not historic.  Did you

4    transfer the deed?

5              MR. NASH:  No, the deed's in the name of the

6    debtor.

7              THE COURT:  Good, then they own it.

8              MR. NASH:  Right.  They own it.

9              THE COURT:  They, the debtor.  It's historic and

10   it's current.

11             MR. NASH:  Right.

12             THE COURT:  Next.

13             MR. NASH:  And the issues really in the case, it's

14   a mortgage default.  There's litigation and claims with the

15   lenders about the proper recording and filing of various

16   mortgages.

17             THE COURT:  There's currently no litigation before

18   me on that issue.  Right?

19             MR. NASH:  Not directly.  The motion to lift the

20   stay does touch upon those defenses.

21             THE COURT:  Okay, but those would have to be

22   commenced by adversary proceedings?

23             MR. NASH:  Yes, they would.

24             THE COURT:  Ms. Katchan?

25             MS. KATCHAN:  Yes.  I understand.

1          THE COURT:  It's done.  But if you want to wait to

2     hear what we've done, I'm not going to interrupt this.  Get

3     here on time.  Okay.  Sorry.

4          MR. NASH:  So we did file the Chapter 11 because

5     of issues with the property.  We do believe that there is a

6     light at the end of the tunnel in the sense that if Your

7     Honor will recall, Ms. Francis is the general partner of the

8     ARC buildings.  And the ARC confirmed the Chapter 11 case

9     before Your Honor.

10          There is a shareholder -- not a shareholder

11     insider dispute with her father and -- who -- and her

12     father-in-law.  And they're fighting over a pot of money of

13     approximately three and a half million dollars.  She has

14     substantial claims in at arbitration.  That is, under the

15     terms of the ARC plan is going to be dealt with first

16     through mediation and then through arbitration.

17          THE COURT:  What's the status of the mediation?

18          MR. NASH:  The status is the father wants to go

19     right to arbitration.  Ms. Francis and Mr. Vinay (ph), they

20     want to do a mediation for --

21          THE COURT:  What did the plan provide?

22          MR. NASH:  It provides for mediation first and

23     then arbitration.  It's before JAMS.  I have not represented

24     Ms. Francis in the arbitration.  I kind of stayed away from

25     it because --

1          THE COURT:  Wait a minute, but the order of

2    confirmation that confirms the confirmed plan --

3          MR. NASH:  Right.

4          THE COURT:  -- the order that confirms the plan

5    states that it will be a two-step process and mediation --

6          MR. NASH:  Two-step.

7          THE COURT:  -- is first?

8          MR. NASH:  The mediation is first.

9          THE COURT:  Okay.  That wasn't something that was

10   -- that you would decide, it's something that was stated?

11         MR. NASH:  No, it was specifically -- it was --

12         THE COURT:  So you have a confirmed plan with an

13   order of this Court that sets forth that mediation is first.

14   I don't know why there should be any issue then.

15         MR. NASH:  Because the concept was to mediate

16   within a period of 60 days and then go to arbitration.  It

17   took several months for all the sides to put their various

18   claims together so they can be in a process to even discuss

19   it and then to mediate.

20          So they got beyond that 60 day window, which they

21   all did on consent.  And now because they're beyond the 60

22   day window, one side is saying no, I want to arbitrate now.

23   I don't want to mediate.

24         THE COURT:  And this is -- and it's the pot of

25   money at the end of this dispute that has gone on forever.

1              MR. NASH:  Yes, it has.

2              THE COURT:  And apparently they can't even get to

3     figure out where they're going to resolve it, or how they're

4     going to resolve it, that everyone is supposed to take

5     solace in, including this lender, that this is how it's

6     going to all get resolved in this case?

7              MR. NASH:  Well, eventually -- it is a sizable pot

8     of money.  So --

9              THE COURT:  I know.

10             MR. NASH:  It's a sizable pot of money and what

11    complicates it is the family dynamic.  And unfortunately,

12    that makes it more difficult than it should be.

13             THE COURT:  Is the family dynamic such that the

14    other members of the family would see this property get

15    foreclosed before they would do anything?

16             MR. NASH:  I can't comment for Ms. Francis'

17    father.  But it is --

18             THE COURT:  No, as attorney for the debtor, do you

19    think --

20             MR. NASH:  What I --

21             THE COURT:  -- that -- I'm not talking about Ms.

22    Francis now.  Do you think that the family members,

23    including Ms. Francis and whoever, would see this property

24    be foreclosed or lost -- I know there's a long process for

25    that too, before they would kick in?

1        MR. NASH:  Not from the debtor's point of view.

2    But her father is a different animal and he's a different

3    creature and he's a difficult man to deal with.  So from our

4    point of view, we want to mediate.  The other family

5    involved wants to mediate.  We are pushing for a mediation.

6    We put a lot of work into getting those claims ready into a

7    readable, understandable form.

8        THE COURT:  No, no, I know that.  I'm just looking

9    at this property.

10        MR. NASH:  We would like to save it.

11        THE COURT:  Would they see this property be lost

12    before they would come together on how to solve the problem

13    of the lender?

14        MR. NASH:  Would the father come together?  I

15    don't know.

16        THE COURT:  I don't know, whoever is involved.

17        MR. NASH:  It's the father and the daughter.  I

18    don't know.

19        THE COURT:  All right.

20        MR. NASH:  The father has a -- he's been a

21    difficult person to pin down in all these cases.  He comes

22    and goes as he likes.  He's had several different attorneys

23    involved in these cases.  And he -- the relationship is as

24    at a lower ebb as I can think of it.  But there is still a

25    father/daughter relationship.  There's a lot of money here.

1    There's a grandchild involved on both -- for both of these

2    men.  There's the father-in-law and the father.  There's a

3    grandchild that lives in this house.

4         So these are things that I would hope at the end

5    of the day they would put these issues aside and do what's

6    better.  If they do nothing else in the case, they should do

7    what's in the best interest of the grandson.  But that is

8    for reasonable people to deal with.  I don't think the

9    father has been reasonable.  He's been difficult to deal

10   with.  Ms. Francis is trying to survive, have a place for

11   her son to live, and to be able to restart her life.

12         Now, the good thing is that there are -- there's a

13   lot of money to fight with here.  And so there's money at

14   the end of the tunnel.  Unfortunately, we couldn't make a

15   deal with the lender before the bankruptcy, but there was --

16   there were certainly the elements of a deal in place.  It's

17   a cash flow issue for Ms. Francis.

18         THE COURT:  Well, let's not get to their motion

19   yet.  I want a status in general.

20         MR. NASH:  Right.  So my goal here is to -- and

21   I'm going to get involved.  I told Mr. Frankel it's time

22   that I -- I stayed away because I was worried about a

23   conflict, but I see that this is going to infect this case,

24   so I'm going to get involved in the arbitration/mediation

25   process and see if I can bring it to a quicker conclusion.

1          There's a lot of money there.  If we're able to

2     get, you know, even a third of that money, it deals very

3     nicely with these issues here.  And we believe that Ms.

4     Francis is entitled to more than that.

5          So with that, I -- we're trying to put together an

6     adequate protection number that we can live with, at least

7     in a short term, while we sort out these issues.  But this

8     mortgage situation is something -- you know, that we're here

9     because she wants to protect where she lives.  And that's,

10    to me, is --

11         THE COURT:  Well, we're going to get there.

12         MR. NASH:  Right.

13         THE COURT:  I have a lot of concern.  Okay.

14         MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky

15    for the U.S. Trustee.

16         In many ways, this case is off to a good start.

17    In some ways, it is not.  It's off to a good start in a

18    sense that it has provided documents requested by the U.S.

19    Trustee.  It created the initial debtor interview, meeting

20    of creditors, filed operating reports.  That's all good.

21         But there's still several concerns.  One concern

22    is that no retention application has been filed for any

23    professionals.  Also, Your Honor, in addition to a -- it's

24    not just that they haven't been filed, not even drafts have

25    been sent to the U.S. Trustee.

1          Additionally, Your Honor, there's a question as to

2     even if there is to be an adequate protection arrangement,

3     what would be the source of the funding because if you look

4     at the present operating reports, I know they're for a

5     fairly short period, but right now, unless, you know, the

6     numbers are substantially favorable to the debtor, there

7     needs to be really some showing where the money is going to

8     come from.

9          THE COURT:  Well, let me see if I understand.  Let

10    me ask you this on retention.  Is there going to be an issue

11    as to the fact, as I understood, I guess, the -- in reading

12    the reply which took me to the 341 meeting transcript, that

13    one of the tenants in the building -- in this property is

14    ARC.  Is that the testimony?

15         MR. KHODOROVSKY:  I think -- well, I don't -- Your

16    Honor, I think ARC definitely uses this property as its

17    address.

18         THE COURT:  Okay.  Well, to the extent that ARC

19    uses the property for whatever reason and ARC is or is not

20    paying anything and what he -- what is the debtor's counsel

21    going to do when the debtor's counsel who represents ARC is

22    going to have to sue ARC in order to get, for instance,

23    rent.  It's a hypothetical at the moment.  But have you

24    given that any thought?

25         MR. NASH:  Yes, Your Honor.  The reason why the

1    application has not been finalized is because there's -- a

2    lot of these (indiscernible) type issues, conflict issues

3    that are more -- they're technical because the ARC case is

4    closed.  There's been claims asserted by Ms. Francis through

5    her various companies concerning rent.  That's one of her

6    claims as part of the arbitration.

7            So -- but I have to lay it out in clear terms for

8    the U.S. Trustee and for Your Honor.  So I've been working

9    on my own declaration.  I happen to be working on it today.

10   I will finalize it in the next --

11           THE COURT:  So that -- I mean, that's somewhat of

12   an explanation.  And it may be at the end of the day this is

13   going to be problematic.  I don't know.

14           MR. NASH:  It may be, Your Honor.

15           THE COURT:  I'm just throwing that out.

16           MR. NASH:  But it's something we're concerned and

17   so it's not a formality of the retention.  It's somewhat

18   complicated.

19           THE COURT:  I mean, obviously your learning curve

20   and what you know about this family and this case is

21   tremendous.  And to that extent, there's a great benefit to

22   the estate.  And unless -- as I said, unless you figure out

23   a way by which you can farm out to another -- other counsel,

24   you know, when those issues come up, issues where you would

25   have to basically, you know, go after a party you've

1  previously represented.

2          MR. NASH:  Which is really -- has a confirmed

3  plan.  They're only fighting over money.  So the money that

4  they're fighting over, whether it's directly or indirectly,

5  it's the same insider affiliate disputed money.

6          THE COURT:  No.  But fighting over money is one

7  thing and then this is an ongoing issue with respect to

8  rent.

9          MR. NASH:  No, ARC really -- ARC has sold its

10  property and it has liquidated and consummated its plan.

11  With -- the rent claim is the accrued rents that were

12  owed --

13          THE COURT:  Okay.  So ARC no longer operates?

14          MR. NASH:  No longer operates.

15          THE COURT:  Okay.  So that would have -- and that

16  occurred before this filing.

17          MR. NASH:  Right.

18          THE COURT:  Okay.  So ARC going forward is not a

19  tenant?

20          MR. NASH:  No.

21          THE COURT:  Okay.

22          MR. KHODOROVSKY:  Your Honor, but there's other

23  corporations owned by Ms. Francis are tenants.

24          THE COURT:  I understand.  As is Ms. Francis

25  herself a tenant, I think.

1          MR. KHODOROVSKY:  Well, Your Honor, the question

2    as to whether she is a tenant or not is an interesting

3    question because the amended -- the Schedules B and G that

4    were fairly recently filed don't, and I just -- let me just

5    open it -- turn to Schedule G.  They don't list any tenants.

6    Schedule G lists no tenants at all.

7          THE COURT:  Well, again, that's going to be part

8    of this dispute.  All right.  Anything else on status?

9          MR. KHODOROVSKY:  Not at this point, Your Honor.

10          THE COURT:  Okay.  So we'll take an adjourned date

11    on status later on.  I want to hold off on the 2004 exam

12    motion, Mr. Frankel.  Well, let me ask you this, Mr.

13    Frankel, the -- the way I see this right now is as to

14    certain issues we have -- or as to a lot of the issues we

15    have a contested matter now.  To the extent that we have a

16    contested matter, I would do a contested scheduling order

17    and allow for discovery.  And that, in many ways, would --

18    there are enough -- it seems to me there are enough issues

19    in this contested matter.

20          It's probably large enough as far as figuring out

21    rental income, and entities, and who owes what, and whether

22    there's been -- what the relationships are and all of that,

23    that it -- interestingly enough, it might be more difficult

24    for the debtor to oppose the requests you're making in

25    discovery of that contested scheduling order than it would

1    be in a 2004.  2004 is a fishing expedition, okay?  But it's

2    a fishing expedition related to the debtor and the debtor's

3    financial affairs.  And it just -- this may be an unusual

4    situation where your 2004 expansiveness is actually not as

5    expansive as your discovery would be in this contested

6    scheduling order because there were so many issues on both

7    sides.  So I just threw that out as a thought.

8         MR. FRANKEL:  I understand.  I've been speaking to

9    debtor's counsel and I think that on the discovery point, we

10   will probably be able to get discovery going without needing

11   that decision to be resolved immediately.  My idea was that

12   let's first find out what they're going to give us because

13   getting anything in discovery is often difficult.  And then

14   we'll look at it and see whether we need more.

15        And from what Mr. Donovan told me the debtor is

16   willing to give and the affiliates are willing to give, it

17   should get us most of the way there, if not all of the way

18   there.  But we won't know until we find out.

19        THE COURT:  Right.  And I understand that part.

20   What I'm saying is that I'm -- if we do a contested

21   scheduling order today with discovery deadlines in there,

22   then that in my mind usually -- again, we don't have an

23   adversary proceeding.  So -- and you haven't commenced an

24   adversary proceeding.  You have commenced this motion which

25   becomes a contested matter.  Whether or not that stops the

1    2004 one might argue or not, I'm just suggesting that it

2    might be a more efficient way to control this situation.

3    Because if we -- if the discovery were done within the

4    contested scheduling order, then off on a 2004 exam.  That

5    was my thinking.

6           MR. FRANKEL:  I offered to serve a subpoena if

7    that would make it easier for the debtor.  I mean, we're

8    not --

9           THE COURT:  Well, I'm not -- again, I'm talking

10   about form now, not substance.

11          MR. FRANKEL:  Yeah, I understand.

12          THE COURT:  So let me -- let's -- I'm going to put

13   that aside when we get to the motion and see what the

14   contested issues are because again, it seemed to me that

15   some of the opposition, you know, related to what -- first

16   of all, five years is not a particularly long time,

17   particularly when state law has a reach back of six years.

18   So the five years didn't trouble me.

19          As far as how many entities and all of that, it

20   seems to me that the extent that these entities have any

21   relationship to this property or had any relationship to

22   this property, then in the contested scheduling order

23   related to this motion it's fair game.  Whereas, again, it

24   might -- they might, you know, try to argue that -- and then

25   it becomes a different issue for me whether or not it's

1    within 2004, which is more focused on the debtor.  So that

2    was a thought I had.

3            All right.  Let's go to the motion and it's your

4    motion.

5            MR. FRANKEL:  Okay.  Well, Judge, after listening

6    to the debtor's presentation on the status conference, the

7    basic problem here is that the debtor sees this as Ms.

8    Francis' home rather than as an LLC entity that has a

9    responsibility to its creditors and that it's not the same

10   thing as a homeowner.  And that is why nothing is being

11   paid, why there's no concept of cash collateral.  The debtor

12   just pays what it wants to pay and then deems it to be in

13   lieu of rent without any judicial oversight or consent of

14   the lender.

15           And I'm just thinking that if a trustee -- if this

16   was a case where there was a trustee involved, that would --

17   none of that would happen.  And that's how you can

18   graphically understand the difference between this being a

19   homeowner and this being an LLC that got a commercial loan.

20   And we want this to be like a regular case where there's

21   someone collecting rent, throwing out non-paying tenants,

22   paying the bills, and giving the excess to the secured

23   creditor.  And that's not going to happen because there's no

24   acknowledgment that this is anything but someone's house.

25           THE COURT:  Well, why do you need the

1    acknowledgment that it's a commercial loan?  I mean, is

2    there something I'm missing as to why you need that

3    acknowledgment as opposed to you need the property to be --

4    I mean, I understand why you need everything else, but you

5    do have this issue of -- you do have this issue of having, I

6    guess, provided a home equity loan.  (Indiscernible).  Maybe

7    that's a red herring as to whether it changes, that maybe

8    it's a combined thing.  But why -- I just didn't understand

9    why you seem to be focused on some acknowledgment that it's

10   a commercial loan.  Why don't we just focus on the fact that

11   it's a loan and it's not being serviced?

12          MR. FRANKEL:  That was the point I tried to make

13   in the reply.

14          THE COURT:  Okay.

15          MR. FRANKEL:  I didn't mean to dilute that point

16   by my comments.

17          THE COURT:  Well, you know, and again, figuring

18   out if this falls within a single asset real estate case

19   seems to me to matter.  I think it's an issue.  But what I

20   read -- what troubled me before I read your reply, I got up

21   and I chatted with my law clerks.  And I said, well, wait a

22   minute.  How come Ms. Francis is not paying rent?  And then

23   I got your reply and it says, "How come Ms. Francis is not

24   paying rent?"

25          So I've got a problem with that.  And again, you

1    can't -- if you're going to be -- if you're going to utilize

2    corporate vehicles, which is perfectly appropriate in this

3    land, then you have to recognize the gift -- you know, you

4    can't have it both ways.  You have to recognize that the

5    corporate entity is a separate, distinct entity and -- I

6    mean, for instance why wouldn't a Chapter 11 debtor in

7    possession or trustee have a potential fraudulent conveyance

8    action against anybody who's been there and hasn't paid any

9    rent for the past?  Aside from paying past rent.  People are

10   getting -- are people getting things for nothing?

11          And to the -- so we need to parse this out.

12   Obviously this is a building, whether it's for seven, or

13   four, or three, or six is obviously an issue of fact of

14   who's in there.  But more than that, whatever it is, whether

15   it's for seven, or four, or six, or whatever -- however it

16   stands now, there is a market value for what this property

17   could be rented for.  And if that equivalent is not being --

18   if it's not being obtained, they have a reason to walk,

19   besides the fact that they haven't seen any payments in a

20   very long time.

21          So what is the adequate -- where are we with

22   adequate protection?  I mean, I read your motion.  I mean, I

23   -- Mr. Frankel is still up here, Mr. Nash.  So hang on a

24   minute.

25          MR. NASH:  Okay.

1              MR. FRANKEL:  Your Honor, we --

2              THE COURT:  I don't need to cut you off on any

3     presentation you have.  That was --

4              MR. FRANKEL:  We suggested based upon an old 2011

5     analysis that was done by an appraiser back then that the

6     monthly rent should be -- I believe it was 11,750 and the

7     expenses are a few thousand.  And there's 7,900 left over,

8     which is less than six percent interest on the mortgage.

9     And that's what we suggested would be a fair amount to pay

10    in lieu of --

11             THE COURT:  What was the -- what was the mortgage

12    payment?

13             MR. FRANKEL:  Six percent, which is about 9,000 a

14    year -- 9,000 a month, 108,000 a year on about a million

15    eight.

16             THE COURT:  Do I have to have a litigation?  Don't

17    shake your head.  Speak through your counsel.  It should not

18    be a disputed issue as to what the monthly mortgage payment

19    was at some point prior to filing, what it should have been.

20    Okay?  You say it was about --

21             MR. FRANKEL:  I've already attached all the loan

22    documents.  We attached the affidavit and the little

23    calculation by the loan officer that it's six percent.  And

24    six percent by my calculation on a million eight comes out

25    to about 9,000 a month.

1          THE COURT:  Well, the argument may be on the

2     million eight.

3          MR. FRANKEL:  Excuse me?

4          THE COURT:  The argument may be -- is the argument

5     about the -- on the million eight?

6          MR. FRANKEL:  The million eight is principle.  It

7     was --

8          THE COURT:  All right.

9          MR. FRANKEL:  -- acknowledged in the forbearance

10    agreement.

11         THE COURT:  Okay.  So all right.  And this amount

12    would be less than that.

13         MR. FRANKEL:  Yes, it's 1,000 -- $1,100 less than

14    that.  And we think that that's less than what would be --

15    it's still -- the obligation is still going to be growing at

16    that number but it is a fair rental value.  It's very

17    upscale property and expensive property, and it generates

18    rent.  And I know that it's the debtor's home but --

19         THE COURT:  Well, but again, if that's disputed it

20    will be part of our contested matter and we'll do an

21    evidentiary hearing that's separate -- I mean, there's two

22    issues here.  There's the value of the property.  There's

23    the value of the rental.

24         MR. FRANKEL:  Right.

25         THE COURT:  You know, you don't have to -- all you

1    have to do is read any newspaper, or turn on New York 1, or

2    turn anything on to know this is a Brooklyn property, right?

3    Brooklyn is hot.  Nobody can afford to live in Brooklyn.

4    They're moving out of Brooklyn to live in Manhattan.

5            So I don't know if -- again, I don't know if this

6    property is part of that, but again that's -- everyone knows

7    that.  This is where -- this is the place to be.

8            MR. FRANKEL:  Now, I understand that the debtor

9    principal probably can't afford to pay that.  And that's a

10   problem and the --

11           THE COURT:  Well, that's why I asked that question

12   in status because it seems to me that's probably true.  And

13   I guess the question is --

14           MR. FRANKEL:  And I have a very simple solution to

15   that.  Just lift the stay.  The property is not going to be

16   sold in Kings County Court for a year anyway, by which point

17   we'll find out what happened in the arbitration and either

18   this case will be confirmed or it will be dismissed or

19   something else will happen.  But it's not going to hold up

20   -- there's no reason to hold us up when we're not going to

21   be interfering anyway.

22           THE COURT:  No problem -- the problem is in cases

23   where there are family disputes.  And again, I had ARC only

24   for the very end.  ARC had been -- right, Judge Fellows

25   case.  So I got it at the very, very end.  So I did not have

1   the -- either the history or the histrionics or whatever you

2   want to call them.

3          But the problem with family disputes is as lawyers

4   when we deal with commercial issues, and judges or whatever,

5   we tend to think that people -- we hope or we advise our

6   clients to think logically.  That people will do things that

7   are reasonable and rational and in their interests.  And

8   when you have family disputes, I'm sure I don't have to --

9   I'm sure you've had your share of them in your firm

10  representing it, people don't always act that way.  They act

11  out of a whole different set of -- a different toolbox.  And

12  that's why I asked the question as to whether or not family

13  members and everybody else, while they're arguing in this

14  mediation/arbitration would let this property go down.  And

15  Mr. Nash really couldn't answer that because I guess there

16  is a certain unpredictability to how family members treat

17  each other when they are at war.

18         So but you should -- your client should not be the

19  victim of that.

20         MR. FRANKEL:  Yeah, we're collateral damage.

21         THE COURT:  I think -- I have a sense that there's

22  been a lot of that in the ARC case and now it's continuing.

23  It's spilling over.

24         Mr. Donovan, Mr. Nash, obviously on the issue of

25  lack of equity and property not necessary for an effective

1    reorganization, that's an evidentiary hearing, a contested

2    matter.  You get discovery and we'll do that.  On the issue

3    of single asset real estate and whether you'd be -- your

4    requirements would be a different section of 362, that

5    sounds like it's an evidentiary hearing and a contested

6    matter as to whether or not that's a single and an operation

7    of law -- application of law by me.

8            But lack of adequate protection, which is its own

9    independent basis is a ground for me to lift the stay and to

10   do it right away unless you offer what I think is reasonable

11   adequate protection or at least on some interim basis

12   subject to being increased or decreased depending upon what

13   -- where the case takes us.

14           MR. NASH:  And I agree with Your Honor.  This is

15   cash flow and Mr. Frankel hit on it.  It's not a question

16   that we're oblivious to the obligation.  We know we have to

17   pay adequate protection.  We do believe -- we offered $3,000

18   a month plus pay the current taxes, which would effectively

19   be a total payment above $4,000 a month on an annualized

20   basis.

21           Mr. Frankel thinks the property is worth more, but

22   his own appraisal -- his drive by appraiser has a fair

23   market value rental of $6,000.  So we went up from three to

24   -- and we had a conversation, Judge.  They were at six --

25   and I don't -- okay.  They were at six in their appraiser, I

1    was at three.  I think we can get to a middle ground.  And

2    what we're talking about is a 90 day period of time.

3              And, you know, and in one sense, they want it to

4    be a commercial loan and I'm not saying they're not entitled

5    to adequate protection, but they do have a problem in the

6    sense that they gave a home equity loan.  By their own

7    documents, it's a home equity loan.  And there is a body of

8    law that says that a homeowner doesn't have to pay rent.

9    There is a body of law that says that.

10             Now, I know that the property is in the name of

11   the LLC, but there's -- there is a body of law that says

12   that.  And we also know adequate protection is to protect

13   them against the diminution in value during the pendency of

14   the Chapter 11.

15             And Your Honor is right.  Brooklyn is hot.  And

16   it's -- these properties are not going down.  That doesn't

17   mean they're not entitled to adequate protection, but there

18   is a flip side to that.  And before we get into esoteric

19   issues of whether this is a home, a residence, or if she

20   rents from herself because it's in the name of an LLC, I

21   think what we should try to do is to get a number that she

22   can live with because we do know if there's an adequate

23   protection payment and she can't make it, then she has a lot

24   of trouble.

25             And this is not a question of not recognizing the

1    need to do it.  She does have a cash flow issue at this

2    point in time.  There's no doubt about it.  But she's got to

3    be able to pay something and there is a light at the end of

4    the tunnel in that arbitration.  So I've got to get the

5    right number.

6           THE COURT:  Unless -- again, unless you're willing

7    to pierce the corporate veil right now, it is not she.

8           MR. NASH:  Okay.

9           THE COURT:  Okay?  It is not she.

10          MR. NASH:  I agree.  That's fine.  But by the same

11   token --

12          THE COURT:  It is the debtor.

13          MR. NASH:  Right.

14          THE COURT:  The debtor is a Chapter 11 fiduciary

15   and in many ways by doing that, by voluntarily putting

16   yourself in that position, you now have a whole host of

17   obligations separate from dealing with a State Court Judge

18   on foreclosure as to why you're supposed to, you know,

19   maximize assets and comply with the fiduciary obligation,

20   which would be to collect rent, and to evict anybody who

21   can't pay and get a paying tenant.

22          Now, I'm not a heartless Judge.  I don't want to

23   put people on the street.  I really try very hard -- the

24   other day, I -- well, last month I took somebody off the

25   street literally and put them back in their apartment.  So

1    that's not what I'm about.  But I don't think you can --

2    again, I don't think you can have it both ways.  If you're

3    going to create corporate entities and you're going to

4    utilize the system, I think you have to act as a fiduciary.

5    Otherwise, you're really opening yourself up it seems to me

6    for an application for a Chapter 11 trustee, assuming one

7    could be paid.

8           MR. NASH:  Understood.  We don't need any more

9    costs.  So perhaps we can take a couple of -- ten minutes

10   and see if we can get a 90 day monthly payment between 3,000

11   and their number that we can -- just for 90 days.  Not

12   forever because there are issues here we can look at.

13          THE COURT:  Well, at the same time during those 90

14   days, we will be -- you'll be conducting discovery, and

15   you'll be dealing with the issues or not?

16          MR. NASH:  Right.

17          THE COURT:  What's --

18          MR. NASH:  We'll be dealing with the issues.

19          THE COURT:  So we'll have a contested scheduling

20   order and --

21          MR. NASH:  Nothing is going to stop.  But we've

22   just got to get us from here to there in a fair manner.

23          THE COURT:  Take a second call.

24          MR. NASH:  Thank you.

25          MR. KHODOROVSKY:  Thank you, Your Honor.

1         (Recessed at 3:45 p.m.; reconvened at 4:12 p.m.)

2              THE CLERK:  Second call in the case of Etienne

3    Estates at Washington LLC.

4              MR. NASH:  Your Honor, we did reach an interim

5    resolution of this, starting May 1 for 90 days, and we'll

6    revisit it after 90 days.  The debtor will pay adequate

7    protection of $5,000 per month without --

8              MR. KHODOROVSKY:  Your Honor -- Your Honor, Nazar

9    Khodorovsky for the U.S. Trustee.

10             I would like Mr. Nash to discuss what's going to

11   be the source of the funding for this $5,000.  Thank you,

12   Your Honor.

13             MR. NASH:  Ms. Francis will be the source of the

14   funding.

15             MR. KHODOROVSKY:  Will it be in the form of a loan

16   or a capital contribution to the debtor?

17             MR. NASH:  It's a question.  I haven't thought it

18   out that deeply, but I would consider it not a loan because

19   that will be another set of issues.  It will be her -- if we

20   want to call it anything, we'll call it a capital

21   contribution.

22             THE COURT:  What -- now, all right.

23             MR. NASH:  I don't want to call it a loan

24   (indiscernible).

25             THE COURT:  We know there's an issue as to who's

1    in there as a tenant and who's not, but I think even your

2    papers indicated that the entity Mismatch?

3           MR. NASH:  Yes, it's Mismatch.

4           THE COURT:  Okay.  So does Mismatch generate any

5    income for which they can pay adequate protection?  I

6    understand that there are other things that get paid, other

7    expenses, but is that not clear or is that part of the

8    bigger problem going on?

9           MR. NASH:  It generates certain income.  It's not

10   a lot of income.  I look at Mismatch as being the equivalent

11   of Ms. Francis.  That's her personal services company.  So

12   when I say Johanna Francis, I'm saying Mismatch.  To me,

13   they're one in the same.  Technically, they're not.

14          They will have to come up, whether it's Johanna

15   Francis, Mismatch, the debtor is going to have to write a

16   check for $5,000 a month.

17          THE COURT:  Okay.  And that will not be a loan,

18   we've heard.

19          MR. KHODOROVSKY:  I understand, Your Honor, but I

20   would like to then respectfully request that any capital

21   contributions or whatever rent, whatever form this takes be

22   properly reflected on the monthly operating reports and

23   properly characterized as an appropriate transaction.  Thank

24   you, Your Honor.

25          THE COURT:  Okay, Mr. Nash?

1                MR. NASH:  Yes.

2                THE COURT:  Okay.  So let's go to -- for a minute

3     to the motion for relief and $5,000 per month for May, April

4     -- May, June, and July.  I've been sitting here too long

5     today.  May, June, and July, correct?

6                MR. NASH:  Yes.

7                THE COURT:  Okay.  Let's just switch gears for a

8     minute.  I was going to fill out and will fill out a

9     contested matters scheduling order.

10               MR. FRANKEL:  Your Honor, before we move on, can I

11    clarify a couple of additional --

12               THE COURT:  Sure.

13               MR. FRANKEL:  This $5,000 per month is not in lieu

14    of but in addition to paying the property expenses,

15    including tax, water, and sewer charges as they come due.

16    And the failure to pay the 5,000 or the tax, water, and

17    sewer will give rise to a trip wire which would trigger the

18    automatic stay in the form of -- we'll make a conditional

19    order to incorporate that concept that payment is due.  If

20    it isn't paid and notice of --

21               THE COURT:  No.  I won't do that.  I mean, again,

22    we're going to have a whole contested matter here on --

23               MR. NASH:  Right.

24               THE COURT:  -- these issues.  I -- maybe that -- I

25    hope that doesn't blow your deal.  But if you're saying you

1    don't come back to me?

2            MR. FRANKEL:  No, no.  I'm saying we come back

3    saying that the payment wasn't made.

4            THE COURT:  Right.

5            MR. FRANKEL:  And therefore, the stay should be

6    lifted based --

7            THE COURT:  It's another, you know, part of your

8    arsenal, right?  But it's not going to be an automatic

9    trigger to lifting the -- an automatic trigger to stay

10   relief.  And maybe we're talking about the same thing.

11           You're not suggesting it's automatic.  You're

12   suggesting that if there's a failure to make an adequate

13   protection payment, you're going to let me know and that's

14   going to be, presumably, you're going to argue a really good

15   reason for me then to lift the stay.

16           MR. FRANKEL:  Well, we would like to make it

17   automatic that --

18           THE COURT:  I'm not going to do that.  It's too

19   early in the case and there's too many -- I mean, that's --

20   I'm not prepared to do that today.  I mean, I understand

21   that's your stipulation, but it's adequate protection.  And

22   if you fail to make adequate protection, again, that's an

23   argument for why I should not continue the stay.  Right?

24           I mean, you're going to be in the middle of this

25   anyway and you're going to be back here.  So if there's not

1    -- if there's a failure to make an adequate protection

2    payment, you can be back here on an emergency basis for a

3    hearing and I'll give you that -- we're going to adjourn

4    this.  So you'll take whatever the adjourned date is and

5    we'll bring it back closer to the problem.

6         MR. FRANKEL:  I think we need a consequence to

7    non-payment.  Otherwise, why pay?

8         MR. NASH:  Well, you're going to lose the

9    property.  You know, you can't go into Court and say I made

10   a deal.  It's $5,000.  I didn't pay.

11        THE COURT:  Well, first of all, this deal has got

12   to be reduced to a writing, a stipulation that I am going to

13   so order, okay?  So that everyone is clear on what it is

14   we're agreeing to.  And it's without prejudice.  Your taking

15   these payments is without prejudice to your motion.  And but

16   the failure to make it -- make a payment -- I mean, you

17   know, what happens if something happens at the property and

18   the money is necessary to protect the property some other

19   way?  I don't know, there's a boiler issue.  You know, the

20   roof caves in.  That something happens and the property --

21   again, to preserve the property, the money is needed.  I

22   don't believe in automatic triggers, again, under the

23   circumstances of this case, so early on in this case when

24   there are so many other determinations to make like what's

25   the value.

1          You know, there is this -- again, there is a

2    potential source of funds in this other situation, but I

3    made it clear that you should not be the one who has to sit

4    out there not getting paid while this -- while these family

5    members continue to fight.

6          But by the same token, I think that this is a

7    situation where, believe me, if there's -- if they've agreed

8    to adequate protection and they fail to make a payment, you

9    will have a very sympathetic ear.  But I want to know if

10   there's a reason why they didn't make the payment.  So

11   rather than you become the Court, I want to continue to be

12   the Court and determine whether or not the stay should be

13   lifted at that point.

14          MR. FRANKEL:  I understand, Your Honor.  In

15   addition, we are going forward with the discovery and

16   including --

17          THE COURT:  Right.  Well, that's what I'm going to

18   do right now.  And I'm going to do -- again, formalize it so

19   we're not -- we need to stay formal.

20          Okay.  We need to pick a date in the future which

21   I'll fill out from when we're going to hear this -- an

22   evidentiary hearing.  I'm going to give you until -- you've

23   conferred already, but I'm going to give you in accordance

24   with 9014(c), direct you under Rule 26 to confer, and then

25   file a certification.

1          Today is -- I'll have you do that by May 9th.  How

2     long do you want for discovery?

3          MR. NASH:  Two months?

4          MR. FRANKEL:  Yes.

5          THE COURT:  Okay.  So discovery will end June

6     27th, is that all right?  And then I -- a week -- well, two

7     weeks later, I'm going to require a brief statement

8     summarizing your positions, the list of intended witnesses

9     and exhibits.  I'll give you two weeks from that, from June

10    27th.  That would take us to July 11th.

11         And then this only takes us through the end of

12    July.  It seems to me that we have to have this hearing in

13    -- this evidentiary hearing in July and allowing enough

14    time, which we're estimating now to be, I don't know, half a

15    day, a day, any ideas?

16         MR. NASH:  A day -- no more than a day.

17         THE COURT:  All right.  I'll set aside a day --

18    let's pick a day in July.  After the 11th.

19         MR. KHODOROVSKY:  Your Honor, the only thing I

20    would like to ask of the status conference -- the next

21    status conference should be held before this evidentiary

22    hearing in July.

23         THE COURT:  Okay, yeah.  And again, Mr. Frankel,

24    if you don't get a payment within -- I don't know if you're

25    going to -- if there's going to be a date and then -- I

1    mean, you're not going to make them send cure notices and

2    stuff presumably.  There's a date.  You will contact

3    chambers and I will put this on immediately because it will

4    be very, very serious.  And if there isn't an explanation

5    for why they haven't made the payment, you may get your

6    relief then and there.  But I can't -- I don't want to

7    decide that today.

8              MR. FRANKEL:  Okay.

9              THE COURT:  Do we -- we know for sure -- hold on a

10   minute.  Okay.  Didn't we already put stuff on for the 15th?

11   Yesterday?  Did we put a lot on?

12             THE CLERK:  I don't remember.

13             MR. NASH:  I do have a trial on the 15th, Judge.

14             THE COURT:  Okay.  July 17th?

15             UNIDENTIFIED SPEAKER:  Kevin, that's the day after

16   -- you've got a two-day trial the 15th and 16th.

17             MR. NASH:  Yeah.  Judge, if -- I do --

18             THE COURT:  Okay.  Okay.  I'll go -- I'll do it

19   another time.  Okay.  July 23rd.

20             MR. NASH:  Thank you, Your Honor.

21             MR. KHODOROVSKY:  At what time, Your Honor?

22             THE COURT:  10:30.  July 23rd.  A hearing on the

23   matter on July 23rd at 10:30.  And I won't put anything else

24   on that day.  Obviously if you resolve the matter or you --

25   that's not a date that's going to work, you'll let me now as

1    soon as you know so I can free it up.

2            MR. NASH:  Thank you, Your Honor.

3            THE COURT:  Or go to the beach.

4            MR. FRANKEL:  Thank you.

5            MR. KHODOROVSKY:  Your Honor, I think there's also

6    a need for a next status conference in this case.

7            THE COURT:  Yes.  Hold on, I'm going to get to it.

8    So Mr. -- the motion for relief from stay, I'm going to --

9    even though I did the contested matter scheduling, I'm still

10   going to adjourn it.  I'm going to continue the stay based

11   upon your making the adequate protection payments.  And I'm

12   going to adjourn it to a date -- when do you want to come

13   back for status?

14           MR. KHODOROVSKY:  I think early June.

15           MR. NASH:  May 29th?

16           MR. KHODOROVSKY:  That works.

17           THE COURT:  Okay.  So I'm going to put the motion

18   for relief from stay on -- continue it to May 29th.  You'll

19   give me -- you'll be able to give me a nature of a status on

20   how discovery is going.  Status is May 29th.

21           MR. KHODOROVSKY:  At what time on the 29th of May,

22   Your Honor?

23           THE CLERK:  2:30, Judge.

24           THE COURT:  And then what are we going to do with

25   -- what do you want to do with the 2004 exam motion?  Do we

1    want to hold it in abeyance seeing what happens with the

2    discovery?

3            MR. FRANKEL:  Yes.  There's just one thing I

4    wanted to mention.  I think that Mr. Donovan and I can work

5    it out.  We've never had to go to court over a -- or with

6    Mr. Nash over a discovery fight before.

7            MR. NASH:  Thanks for including me there.  I

8    appreciate it.

9            MR. FRANKEL:  But one issue that I want to clarify

10   now because it has been a historic issue in the case is that

11   we need to be able to get in to inspect the property.  We

12   have not been able to do that in years.

13           THE COURT:  Well, I -- you're going to -- I assume

14   you've got an appraisal.

15           MR. NASH:  Right.

16           THE COURT:  Are you planning to do your own

17   appraisal?

18           MR. FRANKEL:  Yes.  And there was testimony at the

19   341 meeting about conditions at the property.  We need to

20   have an inspection.

21           MR. NASH:  All right.  We'll arrange for that.

22           MR. FRANKEL:  Thank you.

23           THE COURT:  Is that going -- that's what I'm

24   asking you.  Is it an inspection and an appraisal?

25           MR. FRANKEL:  Yes, we'll be doing both.

1            THE COURT:  Okay.  So you'll have an appraiser

2     with an appraisal on -- presumably for the hearing.  And

3     then again if anybody was going to take discovery of anybody

4     else's expert, I didn't put a separate date in for that.

5     But I would urge you rather than make this more complicated

6     to create a separate date, as soon as you know who your

7     appraiser is and when you have an appraisal, if you could

8     exchange those documents.

9            MR. FRANKEL:  Certainly.

10            THE COURT:  So if either one of you wants to do a

11     deposition of the other's appraiser, you could do that.

12     Okay.

13            MR. NASH:  Thank you, Your Honor.

14            THE COURT:  I'm hoping that we won't need to do

15     that.  Okay, so I'll carry the 2004 exam motion to the same

16     date?

17            MR. FRANKEL:  Yes.

18            THE COURT:  Okay.

19            THE CLERK:  To the May date?

20            THE COURT:  Yeah.  And I'm going to enter this

21     order and I'm going to look for you to circulate a very

22     short stip with respect to the continuation of the stay

23     based upon the adequate protection payments.  There -- how

24     it's -- the fact that there -- it also requires the

25     continuation by the debtor of paying the other items, and

1    the fact that Mr. Frankel's client can seek an expedited

2    hearing in the -- on immediate stay relief in the event that

3    there's a failure to make a payment or of either category.

4              MR. NASH:  Okay.

5              THE COURT:  All right?

6              MR. NASH:  Yes.

7              MR. KHODOROVSKY:  Your Honor, I would like to

8    request that the draft stipulation be circulated to the U.S.

9    Trustee.

10             THE COURT:  Circulate it to the U.S. Trustee.

11             MR. KHODOROVSKY:  Thank you, Your Honor.

12             THE COURT:  Okay.  All right.  I think that's it.

13        (Chorus of thank you)

14             THE COURT:  Again, this will be uploaded.

15        (Chorus of thank you)

16             THE COURT:  And I encourage everybody to stay for

17   the 5 o'clock festivities, although I understand there's a

18   -- there's also something for Judge Lifland going on in

19   Manhattan.

20             MR. KHODOROVSKY:  Yes, Judge.

21             THE COURT:  Yeah, so I don't know.  Whatever,

22   anyway.  Good luck.

23             MR. NASH:  Thank you.

24             MR. KHODOROVSKY:  Have a good afternoon, Your

25   Honor.

1          THE COURT:  Did I do everything?

2      (Whereupon, the proceedings were concluded at 4:28

3   P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 43

1                    C E R T I F I C A T I O N

2

3    We, Jamie Gallagher, certify that the foregoing transcript

4    is a true and accurate record of the proceedings.

5    Jamie        Digitally signed by Jamie
                   Gallagher
                   DN: cn=Jamie Gallagher, o, ou,
6    Gallagher     email=digital@veritext.com, c=US
                   Date: 2018.03.01 15:10:05 -05'00'

7    Jamie Gallagher

8

9

10   Date:  March 1, 2018

11

12

13

14

15

16   Veritext Legal Solutions

17   330 Old Country Road

18   Suite 300

19   Mineola, NY 11501

20

21

22

23

24

25

| & | | a | agreement 23:10 |
|---|---|---|---|

**&**

**&** 3:11,19 5:5

**1**

**1** 24:1 30:5 43:10
**1,000** 23:13
**1,100** 23:13
**10** 2:3
**10006** 3:23
**10014** 4:5
**10022** 3:15
**10036** 3:6
**1006** 4:4
**108,000** 22:14
**10:30** 37:22,23
**11** 2:6 6:1 7:4,8
  21:6 27:14 28:14
  29:6
**11,750** 22:6
**11201** 1:17
**11501** 43:19
**11th** 3:14 36:10
  36:18
**14-40786** 1:7
**1501** 3:4
**15th** 37:10,13,16
**16th** 37:16
**176** 2:7
**17th** 37:14

**2**

**2004** 2:3 5:18
  16:11 17:1,1,4
  18:1,4 19:1 38:25
  40:15
**201** 4:3
**2011** 22:4
**2014** 1:19
**2018** 43:10
**22nd** 3:5
**23rd** 37:19,22,23
**24** 1:19
**26** 35:24

**271** 1:16
**27th** 36:6,10
**29th** 38:15,18,20
  38:21
**2:30** 38:23

**3**

**3,000** 26:17 29:10
**300** 43:18
**31** 5:2
**33** 5:2
**330** 43:17
**341** 13:12 39:19
**362** 26:4
**3:12** 1:20
**3:45** 30:1

**4**

**4,000** 26:19
**46** 3:21
**4:12** 30:1
**4th** 3:22

**5**

**5** 41:17
**5,000** 30:7,11
  31:16 32:3,13,16
  34:10

**6**

**6,000** 26:23
**60** 8:16,20,21

**7**

**7** 2:1
**7,900** 22:7

**8**

**800** 3:13

**9**

**9,000** 22:13,14,25
**90** 27:2 29:10,11
  29:13 30:5,6
**9014** 35:24
**9th** 36:1

**a**

**abeyance** 39:1
**able** 11:11 12:1
  17:10 28:3 38:19
  39:11,12
**accrued** 15:11
**accurate** 43:4
**acknowledged**
  23:9
**acknowledgment**
  19:24 20:1,3,9
**act** 25:10,10 29:4
**action** 21:8
**addition** 12:23
  32:14 35:15
**additional** 32:11
**additionally** 13:1
**address** 13:17
**adequate** 12:6
  13:2 21:21,22
  26:8,11,17 27:5
  27:12,17,22 30:6
  31:5 33:12,21,22
  34:1 35:8 38:11
  40:23
**adjourn** 34:3
  38:10,12
**adjourned** 16:10
  34:4
**adversary** 6:22
  17:23,24
**advise** 25:5
**affairs** 17:3
**affidavit** 22:22
**affiliate** 15:5
**affiliates** 17:16
**afford** 24:3,9
**afternoon** 5:9,10
  41:24
**agree** 26:14 28:10
**agreed** 35:7
**agreeing** 34:14

**agreement** 23:10
**allow** 16:17
**allowing** 36:13
**amended** 16:3
**amount** 2:6 22:9
  23:11
**analysis** 22:5
**animal** 10:2
**annualized** 26:19
**answer** 25:15
**anybody** 21:8
  28:20 40:3,3
**anyway** 24:16,21
  33:25 41:22
**apartment** 28:25
**apparently** 9:2
**appearances** 5:4
**application** 12:22
  14:1 26:7 29:6
**appraisal** 26:22
  39:14,17,24 40:2
  40:7
**appraiser** 22:5
  26:22,25 40:1,7
  40:11
**appreciate** 39:8
**appropriate** 21:2
  31:23
**approximately**
  7:13
**april** 1:19 32:3
**arbitrate** 8:22
**arbitration** 7:14
  7:16,19,23,24
  8:16 11:24 14:6
  24:17 25:14 28:4
**arc** 7:8,8,15 13:14
  13:16,18,19,21,22
  14:3 15:9,9,13,18
  24:23,24 25:22
**argue** 18:1,24
  33:14

| | | | |
|---|---|---|---|
| **arguing**  25:13 | **behalf**  2:4,7 | **cash**  11:17 19:11 | **collateral**  19:11 |
| **argument**  23:1,4 | **believe**  7:5 12:3 | 26:15 28:1 | 25:20 |
| 23:4 33:23 | 22:6 26:17 34:22 | **category**  41:3 | **collect**  28:20 |
| **arrange**  39:21 | 35:7 | **caves**  34:20 | **collecting**  19:21 |
| **arrangement**  13:2 | **benefit**  14:21 | **central**  2:4,7 3:12 | **combined**  20:8 |
| **arsenal**  33:8 | **best**  11:7 | 5:6 | **come**  10:12,14 |
| **aside**  11:5 18:13 | **better**  11:6 | **certain**  16:14 | 13:8 14:24 20:22 |
| 21:9 36:17 | **beyond**  8:20,21 | 25:16 31:9 | 20:23 31:14 32:15 |
| **asked**  24:11 25:12 | **bigger**  31:8 | **certainly**  11:16 | 33:1,2 38:12 |
| **asking**  39:24 | **bills**  19:22 | 40:9 | **comes**  10:21 |
| **asserted**  14:4 | **blow**  32:25 | **certification** | 22:24 |
| **asset**  20:18 26:3 | **body**  27:7,9,11 | 35:25 | **commenced**  6:22 |
| **assets**  28:19 | **boiler**  34:19 | **certify**  43:3 | 17:23,24 |
| **assume**  39:13 | **brief**  36:7 | **chambers**  37:3 | **comment**  9:16 |
| **assuming**  29:6 | **bring**  11:25 34:5 | **changes**  20:7 | **comments**  20:16 |
| **attached**  22:21,22 | **broadway**  3:4 | **chapter**  6:1 7:4,8 | **commercial**  19:19 |
| **attorney**  3:12,20 | **brooklyn**  1:17 | 21:6 27:14 28:14 | 20:1,10 25:4 27:4 |
| 4:2 5:12 9:18 | 24:2,3,3,4 27:15 | 29:6 | **companies**  14:5 |
| **attorneys**  3:3 5:6 | **building**  13:13 | **characterized** | **company**  31:11 |
| 10:22 | 21:12 | 31:23 | **complicated** |
| **automatic**  32:18 | **buildings**  7:8 | **charges**  32:15 | 14:18 40:5 |
| 33:8,9,11,17 | **c** | **chatted**  20:21 | **complicates**  9:11 |
| 34:22 | | **check**  31:16 | **comply**  28:19 |
| **avenue**  3:13 | **c**  1:16 3:1 5:1 | **chorus**  41:13,15 | **concept**  8:15 |
| **b** | 35:24 43:1,1 | **circulate**  40:21 | 19:11 32:19 |
| | **cadman**  1:16 | 41:10 | **concern**  12:13,21 |
| **b**  1:23 16:3 | **calculation**  22:23 | **circulated**  41:8 | **concerned**  14:16 |
| **back**  18:17 22:5 | 22:24 | **circumstances** | **concerning**  14:5 |
| 28:25 33:1,2,25 | **call**  25:2 29:23 | 34:23 | **concerns**  12:21 |
| 34:2,5 38:13 | 30:2,20,20,23 | **claim**  15:11 | **concluded**  42:2 |
| **backenroth**  3:11 | **capital**  30:16,20 | **claims**  6:14 7:14 | **conclusion**  11:25 |
| 5:5 | 31:20 | 8:18 10:6 14:4,6 | **conditional**  32:18 |
| **bank**  2:4,8 3:12 | **carry**  40:15 | **clarify**  32:11 39:9 | **conditions**  39:19 |
| 5:6 | **case**  1:7 5:3,23 | **clear**  14:7 31:7 | **conducting**  29:14 |
| **bankruptcy**  1:1 | 6:13 7:8 9:6 11:6 | 34:13 35:3 | **confer**  35:24 |
| 1:15,25 11:15 | 11:23 12:16 14:3 | **clerk**  5:2 30:2 | **conference**  2:1 |
| **based**  22:4 33:6 | 14:20 19:16,20 | 37:12 38:23 40:19 | 5:16 19:6 36:20 |
| 38:10 40:23 | 20:18 24:18,25 | **clerks**  20:21 | 36:21 38:6 |
| **basic**  19:7 | 25:22 26:13 30:2 | **client**  25:18 41:1 | **conferred**  35:23 |
| **basically**  14:25 | 33:19 34:23,23 | **clients**  25:6 | **confirmation**  8:2 |
| **basis**  26:9,11,20 | 38:6 39:10 | **closed**  14:4 | **confirmed**  7:8 8:2 |
| 34:2 | **cases**  10:21,23 | **closer**  34:5 | 8:12 15:2 24:18 |
| **beach**  38:3 | 24:22 | | |

**confirms** 8:2,4
**conflict** 11:23
  14:2
**consent** 8:21
  19:13
**consequence** 34:6
**consider** 30:18
**consummated**
  15:10
**contact** 37:2
**contested** 5:19
  16:15,16,16,19,25
  17:5,20,25 18:4
  18:14,22 23:20
  26:1,5 29:19 32:9
  32:22 38:9
**continuation**
  40:22,25
**continue** 33:23
  35:5,11 38:10,18
**continuing** 25:22
**contribution**
  30:16,21
**contributions**
  31:21
**control** 18:2
**conversation**
  26:24
**conveyance** 21:7
**coritsidis** 3:19
**corporate** 21:2,5
  28:7 29:3
**corporations**
  15:23
**correct** 32:5
**costs** 29:9
**counsel** 3:20 5:8
  13:20,21 14:23
  17:9 22:17
**country** 43:17
**county** 24:16
**couple** 29:9 32:11

**court** 1:1,15 3:20
  5:4,7,10,16 6:3,7
  6:9,12,17,21,24
  7:1,17,21 8:1,4,7
  8:9,12,13,24 9:2,9
  9:13,18,21 10:8
  10:11,16,19 11:18
  12:11,13 13:9,18
  14:11,15,19 15:6
  15:13,15,18,21,24
  16:7,10 17:19
  18:9,12 19:25
  20:14,17 22:2,11
  22:16 23:1,4,8,11
  23:19,25 24:11,16
  24:22 25:21 28:6
  28:9,12,14,17
  29:13,17,19,23
  30:22,25 31:4,17
  31:25 32:2,7,12
  32:21,24 33:4,7
  33:18 34:9,11
  35:11,12,17 36:5
  36:17,23 37:9,14
  37:18,22 38:3,7
  38:17,24 39:5,13
  39:16,23 40:1,10
  40:14,18,20 41:5
  41:10,12,14,16,21
  42:1
**create** 29:3 40:6
**created** 12:19
**creature** 10:3
**creditor** 19:23
**creditors** 12:20
  19:9
**cure** 37:1
**current** 6:10
  26:18
**currently** 6:17
**curve** 14:19
**cut** 22:2

**d**

**d** 5:1
**damage** 25:20
**date** 16:10 34:4
  35:20 36:25 37:2
  37:25 38:12 40:4
  40:6,16,19 43:10
**daughter** 10:17
  10:25
**day** 8:20,22 11:5
  14:12 27:2 28:24
  29:10 36:15,15,16
  36:16,17,18 37:15
  37:16,24
**days** 8:16 29:11
  29:14 30:5,6
**dc** 1:7
**deadlines** 17:21
**deal** 10:3 11:8,9
  11:15,16 25:4
  32:25 34:10,11
**dealing** 28:17
  29:15,18
**deals** 12:2
**dealt** 7:15
**debtor** 1:9 3:3
  5:14 6:6,9 9:18
  12:19 13:6 16:24
  17:2,15 18:7 19:1
  19:7,11 21:6 24:8
  28:12,14 30:6,16
  31:15 40:25
**debtor's** 10:1
  13:20,21 17:2,9
  19:6 23:18
**decide** 8:10 37:7
**decision** 17:11
**declaration** 14:9
**decreased** 26:12
**deed** 6:4
**deed's** 6:5
**deems** 19:12

**deeply** 30:18
**default** 6:14
**defenses** 6:20
**definitely** 13:16
**department** 4:1
**depending** 26:12
**deposition** 40:11
**determinations**
  34:24
**determine** 35:12
**difference** 19:18
**different** 10:2,2
  10:22 18:25 25:11
  25:11 26:4
**difficult** 9:12 10:3
  10:21 11:9 16:23
  17:13
**dilute** 20:15
**diminution** 27:13
**direct** 35:24
**directly** 6:19 15:4
**discovery** 16:17
  16:25 17:5,9,10
  17:13,21 18:3
  26:2 29:14 35:15
  36:2,5 38:20 39:2
  39:6 40:3
**discuss** 8:18 30:10
**dismissed** 24:18
**dispute** 6:2 7:11
  8:25 16:8
**disputed** 15:5
  22:18 23:19
**disputes** 24:23
  25:3,8
**distinct** 21:5
**district** 1:2
**documents** 12:18
  22:22 27:7 40:8
**doing** 28:15 39:25
**dollars** 7:13
**donovan** 3:8 5:13
  5:13 17:15 25:24

39:4

**doubt** 28:2

**draft** 41:8

**drafts** 12:24

**drive** 26:22

**due** 32:15,19

**dynamic** 9:11,13

**e**

**e** 1:23,23 3:1,1 5:1
5:1 43:1

**ear** 35:9

**early** 33:19 34:23
38:14

**easier** 18:7

**east** 1:16

**eastern** 1:2

**ebb** 10:24

**effective** 25:25

**effectively** 26:18

**efficient** 18:2

**eight** 22:15,24
23:2,5,6

**either** 24:17 25:1
40:10 41:3

**elements** 11:16

**else's** 40:4

**emergency** 34:2

**encourage** 41:16

**enter** 40:20

**entities** 16:21
18:19,20 29:3

**entitled** 12:4 27:4
27:17

**entity** 19:8 21:5,5
31:2

**equity** 20:6 25:25
27:6,7

**equivalent** 21:17
31:10

**esoteric** 27:18

**esq** 3:8,9,17,25
4:7

**estate** 5:8 14:22
20:18 26:3

**estates** 1:7 5:3,24
30:3

**estimating** 36:14

**etienne** 1:7 5:3,24
30:2

**event** 41:2

**eventually** 9:7

**everybody** 25:13
41:16

**evict** 28:20

**evidentiary** 23:21
26:1,5 35:22
36:13,21

**exam** 5:18 16:11
18:4 38:25 40:15

**examination** 2:3

**excess** 19:22

**exchange** 40:8

**excuse** 23:3

**exhibits** 36:9

**expansive** 17:5

**expansiveness**
17:4

**expedited** 41:1

**expedition** 17:1,2

**expenses** 22:7
31:7 32:14

**expensive** 23:17

**expert** 40:4

**explanation** 14:12
37:4

**extent** 13:18
14:21 16:15 18:20

**f**

**f** 1:23 43:1

**fact** 13:11 20:10
21:13,19 40:24
41:1

**fail** 33:22 35:8

**failure** 32:16
33:12 34:1,16

41:3

**fair** 18:23 22:9
23:16 26:22 29:22

**fairly** 13:5 16:4

**falls** 20:18

**family** 9:11,13,14
9:22 10:4 14:20
24:23 25:3,8,12
25:16 35:4

**far** 16:20 18:19

**farm** 14:23

**father** 7:11,12,18
9:17 10:2,14,17
10:20,25 11:2,2,9

**favorable** 13:6

**fee** 2:6

**fellows** 24:24

**festivities** 41:17

**fiduciary** 28:14
28:19 29:4

**fight** 11:13 35:5
39:6

**fighting** 7:12 15:3
15:4,6

**figure** 9:3 14:22

**figuring** 16:20
20:17

**file** 7:4 35:25

**filed** 3:3,7 6:1
12:20,22,24 16:4

**filing** 6:15 15:16
22:19

**fill** 32:8,8 35:21

**finalize** 14:10

**finalized** 14:1

**financial** 17:3

**find** 17:12,18
24:17

**fine** 28:10

**finkel** 3:2

**firm** 25:9

**first** 2:4,7 3:12 5:6
5:17 7:15,22 8:7,8

8:13 17:12 18:15
34:11

**fishing** 17:1,2

**five** 18:16,18

**flip** 27:18

**floor** 3:5,14,22

**flow** 11:17 26:15
28:1

**focus** 20:10

**focused** 19:1 20:9

**forbearance** 23:9

**foreclosed** 9:15,24

**foreclosure** 3:20
5:7 28:18

**foregoing** 43:3

**forever** 8:25
29:12

**form** 10:7 18:10
30:15 31:21 32:18

**formal** 35:19

**formality** 14:17

**formalize** 35:18

**forth** 8:13

**forward** 15:18
35:15

**four** 21:13,15

**francis** 5:14,25
7:7,19,24 9:16,22
9:23 11:10,17
12:4 14:4 15:23
15:24 19:8 20:22
20:23 30:13 31:11
31:12,15

**frankel** 2:4,7 3:11
3:17 5:5,5,5 11:21
16:12,13 17:8
18:6,11 19:5
20:12,15 21:23
22:1,4,13,21 23:3
23:6,9,13,24 24:8
24:14 25:20 26:15
26:21 32:10,13
33:2,5,16 34:6

35:14 36:4,23
37:8 38:4 39:3,9
39:18,22,25 40:9
40:17
**frankel's** 41:1
**fraudulent** 21:7
**free** 38:1
**funding** 13:3
30:11,14
**funds** 35:2
**future** 35:20

**g**

**g** 5:1 16:3,5,6
**gallagher** 2:25
43:3,7
**game** 18:23
**gangemi** 3:25 5:7
5:9
**gears** 32:7
**general** 7:7 11:19
**generate** 31:4
**generates** 23:17
31:9
**getting** 10:6 17:13
21:10,10 35:4
**gift** 21:3
**give** 17:12,16,16
32:17 34:3 35:22
35:23 36:9 38:19
38:19
**given** 13:24
**giving** 19:22
**go** 7:18 8:16 14:25
19:3 25:14 32:2
34:9 37:18 38:3
39:5
**goal** 11:20
**goes** 10:22
**going** 7:2,15 9:3,4
9:6 11:21,23,24
12:11 13:7,10,21
13:22 14:13 15:18
16:7 17:10,12

18:12 19:23 21:1
21:1 23:15 24:15
24:19,20 27:16
29:3,3,21 30:10
31:8,15 32:8,22
33:8,13,14,14,18
33:24,25 34:3,8
34:12 35:15,17,18
35:21,22,23 36:7
36:25,25 37:1,25
38:7,8,10,10,12
38:17,20,24 39:13
39:23 40:3,20,21
41:18
**goldberg** 3:2 5:13
**goldstein** 3:2
**good** 5:9,10 6:7
11:12 12:16,17,20
33:14 41:22,24
**grandchild** 11:1,3
**grandson** 11:7
**graphically** 19:18
**great** 14:21
**ground** 26:9 27:1
**growing** 23:15
**guess** 13:11 20:6
24:13 25:15

**h**

**half** 7:13 36:14
**hang** 21:23
**happen** 14:9
19:17,23 24:19
**happened** 24:17
**happens** 34:17,17
34:20 39:1
**hard** 28:23
**head** 22:17
**hear** 7:2 35:21
**heard** 31:18
**hearing** 2:1,3,6
23:21 26:1,5 34:3
35:22 36:12,13,22
37:22 40:2 41:2

**heartless** 28:22
**held** 36:21
**herring** 20:7
**hershey** 1:24
**historic** 5:25 6:3,3
6:9 39:10
**history** 25:1
**histrionics** 25:1
**hit** 26:15
**hold** 16:11 24:19
24:20 37:9 38:7
39:1
**home** 19:8 20:6
23:18 27:6,7,19
**homeowner** 19:10
19:19 27:8
**hon** 1:24
**honor** 5:9,22 7:7,9
12:14,23 13:1,16
13:25 14:8,14
15:22 16:1,9 22:1
26:14 27:15 29:25
30:4,8,8,12 31:19
31:24 32:10 35:14
36:19 37:20,21
38:2,5,22 40:13
41:7,11,25
**hope** 11:4 25:5
32:25
**hoping** 40:14
**host** 28:16
**hot** 24:3 27:15
**house** 11:3 19:24
**hypothetical**
13:23

**i**

**idea** 17:11
**ideas** 36:15
**immediate** 41:2
**immediately**
17:11 37:3
**including** 9:5,23
32:15 35:16 39:7

**income** 16:21 31:5
31:9,10
**incorporate** 32:19
**increased** 26:12
**independent** 26:9
**indicated** 31:2
**indirectly** 15:4
**indiscernible** 14:2
20:6 30:24
**infect** 11:23
**initial** 12:19
**insider** 7:11 15:5
**inspect** 39:11
**inspection** 39:20
39:24
**instance** 13:22
21:6
**intended** 36:8
**interest** 11:7 22:8
**interesting** 16:2
**interestingly**
16:23
**interests** 25:7
**interfering** 24:21
**interim** 26:11
30:4
**interrupt** 7:2
**interview** 12:19
**involved** 10:5,16
10:23 11:1,21,24
19:16
**issue** 6:18 8:14
11:17 13:10 15:7
18:25 20:5,5,19
21:13 22:18 25:24
26:2 28:1 30:25
34:19 39:9,10
**issues** 6:13 7:5
11:5 12:3,7 14:2,2
14:24,24 16:14,14
16:18 17:6 18:14
23:22 25:4 27:19
29:12,15,18 30:19

32:24
**items** 40:25

**j**

**j** 3:8
**jamie** 2:25 43:3,7
**jams** 7:23
**jeff** 5:7
**jeffrey** 3:25
**johanna** 5:14
  31:12,14
**judge** 1:25 19:5
  24:24 26:24 28:17
  28:22 37:13,17
  38:23 41:18,20
**judges** 25:4
**judicial** 19:13
**july** 32:4,5 36:10
  36:12,13,18,22
  37:14,19,22,23
**june** 32:4,5 36:5,9
  38:14
**justice** 4:1

**k**

**katchan** 6:24,25
**kevin** 3:9 5:13
  37:15
**khodorovsky** 4:7
  5:11,11 12:14,14
  13:15 15:22 16:1
  16:9 29:25 30:8,9
  30:15 31:19 36:19
  37:21 38:5,14,16
  38:21 41:7,11,20
  41:24
**kick** 9:25
**kind** 7:24
**kings** 24:16
**know** 8:14 9:9,24
  10:8,15,16,18
  12:2,8 13:4,5
  14:13,20,24,25
  17:18 18:15,24
  20:17 21:3 23:18

23:25 24:2,5,5
  26:16 27:3,10,12
  27:22 28:18 30:25
  33:7,13 34:9,17
  34:19,19 35:1,9
  36:14,24 37:9
  38:1 40:6 41:21
**knows** 24:6
**krinsky** 3:11 5:6

**l**

**lack** 25:25 26:8
**lambros** 3:19
**land** 21:3
**large** 16:20
**law** 7:12 11:2
  18:17 20:21 26:7
  26:7 27:8,9,11
**lawyers** 25:3
**lay** 14:7
**learning** 14:19
**left** 22:7
**legal** 43:16
**lender** 9:5 10:13
  11:15 19:14
**lenders** 6:2,15
**lieu** 19:13 22:10
  32:13
**life** 11:11
**lifland** 41:18
**lift** 6:19 24:15
  26:9 33:15
**lifted** 33:6 35:13
**lifting** 33:9
**light** 7:6 28:3
**likes** 10:22
**limited** 5:18
**liquidated** 15:10
**list** 16:5 36:8
**listening** 19:5
**lists** 16:6
**literally** 28:25
**litigation** 6:14,17
  22:16

**little** 22:22
**live** 11:11 12:6
  24:3,4 27:22
**lives** 6:1 11:3 12:9
**llc** 5:3,24 19:8,19
  27:11,20 30:3
**llp** 3:2,11
**loan** 19:19 20:1,6
  20:10,11 22:21,23
  27:4,6,7 30:15,18
  30:23 31:17
**logically** 25:6
**long** 9:24 18:16
  21:20 32:4 36:2
**longer** 15:13,14
**look** 13:3 17:14
  29:12 31:10 40:21
**looking** 10:8
**lord** 1:24
**lose** 34:8
**lost** 9:24 10:11
**lot** 10:6,25 11:13
  12:1,13 14:2
  16:14 25:22 27:23
  31:10 37:11
**lower** 10:24
**luck** 41:22

**m**

**making** 16:24
  38:11
**man** 10:3
**manhattan** 24:4
  41:19
**manner** 29:22
**march** 43:10
**mark** 2:3,7 3:17
  5:5
**market** 21:16
  26:23
**matter** 1:5 5:2
  16:15,16,19 17:25
  20:19 23:20 26:2
  26:6 32:22 37:23

37:24 38:9
**matters** 32:9
**maximize** 28:19
**mean** 14:11,19
  18:7 20:1,4,15
  21:6,22,22 23:21
  27:17 32:21 33:19
  33:20,24 34:16
  37:1
**mediate** 8:15,19
  8:23 10:4,5
**mediation** 7:16,17
  7:20,22 8:5,8,13
  10:5 11:24 25:14
**meeting** 12:19
  13:12 39:19
**members** 9:14,22
  25:13,16 35:5
**men** 11:2
**mention** 39:4
**middle** 27:1 33:24
**million** 7:13 22:14
  22:24 23:2,5,6
**mind** 17:22
**mineola** 43:19
**minute** 8:1 20:22
  21:24 32:2,5
  37:10
**minutes** 29:9
**mismatch** 31:2,3
  31:4,10,12,15
**missing** 20:2
**moment** 13:23
**money** 7:12 8:25
  9:8,10 10:25
  11:13,13 12:1,2
  13:7 15:3,3,5,6
  34:18,21
**month** 22:14,25
  26:18,19 28:24
  30:7 31:16 32:3
  32:13

**monthly** 22:6,18 29:10 31:22
**months** 8:17 36:3
**mortgage** 6:14 12:8 22:8,11,18
**mortgages** 6:16
**motion** 2:3,6 5:18 5:19 6:19 11:18 16:12 17:24 18:13 18:23 19:3,4 21:22 32:3 34:15 38:8,17,25 40:15
**move** 32:10
**moving** 24:4

**n**

**n** 3:1 5:1 43:1
**name** 5:24 6:5 27:10,20
**nancy** 1:24
**nash** 3:9 5:13,22 6:5,8,11,13,19,23 7:4,18,22 8:3,6,8 8:11,15 9:1,7,10 9:16,20 10:1,10 10:14,17,20 11:20 12:12 13:25 14:14 14:16 15:2,9,14 15:17,20 21:23,25 25:15,24 26:14 28:8,10,13 29:8 29:16,18,21,24 30:4,10,13,17,23 31:3,9,25 32:1,6 32:23 34:8 36:3 36:16 37:13,17,20 38:2,15 39:6,7,15 39:21 40:13 41:4 41:6,23
**nature** 38:19
**nazar** 4:7 5:11 12:14 30:8
**necessary** 25:25 34:18

**need** 17:14 19:25 20:2,3,4 21:11 22:2 28:1 29:8 34:6 35:19,20 38:6 39:11,19 40:14
**needed** 34:21
**needing** 17:10
**needs** 13:7
**never** 39:5
**new** 1:2 3:6,15,23 4:5 24:1
**newspaper** 24:1
**nhl** 1:7
**nicely** 12:3
**non** 19:21 34:7
**notice** 32:20
**notices** 37:1
**number** 12:6 23:16 27:21 28:5 29:11
**numbers** 5:2 13:6
**ny** 1:17 3:6,15,23 4:5 43:19

**o**

**o** 1:23 5:1 43:1
**o'clock** 41:17
**objection** 5:19
**obligation** 23:15 26:16 28:19
**obligations** 28:17
**oblivious** 26:16
**obtained** 21:18
**obviously** 14:19 21:12,13 25:24 37:24
**occurred** 15:16
**offer** 26:10
**offered** 18:6 26:17
**office** 5:12
**officer** 22:23
**okay** 5:16 6:21 7:3 8:9 12:13

13:18 15:13,15,18 15:21 16:10 17:1 19:5 20:14 21:25 22:20 23:11 26:25 28:8,9 31:4,17,25 32:2,7 34:13 35:20 36:5,23 37:8,10,14,18,18 37:19 38:17 40:1 40:12,15,18 41:4 41:12
**old** 22:4 43:17
**ongoing** 15:7
**open** 16:5
**opening** 29:5
**operates** 15:13,14
**operating** 12:20 13:4 31:22
**operation** 26:6
**oppose** 16:24
**opposed** 20:3
**opposition** 18:15
**order** 8:1,4,13 13:22 16:16,25 17:6,21 18:4,22 29:20 32:9,19 34:13 40:21
**overall** 5:22
**oversight** 19:13
**owed** 15:12
**owes** 16:21
**owned** 15:23

**p**

**p** 3:1,1 5:1
**p.m.** 30:1,1 42:3
**paid** 19:11 21:8 29:7 31:6 32:20 35:4
**papers** 31:2
**parse** 21:11
**part** 14:6 16:7 17:19 23:20 24:6 31:7 33:7

**particularly** 18:16,17
**partner** 7:7
**party** 14:25
**pay** 19:12 22:9 24:9 26:17,18 27:8 28:3,21 30:6 31:5 32:16 34:7 34:10
**paying** 13:20 19:21,22 20:22,24 21:9 28:21 32:14 40:25
**payment** 22:12,18 26:19 27:23 29:10 32:19 33:3,13 34:2,7,16 35:8,10 36:24 37:5 41:3
**payments** 21:19 34:15 38:11 40:23
**pays** 19:12
**pendency** 27:13
**people** 11:8 21:9 21:10 25:5,6,10 28:23
**percent** 22:8,13 22:23,24
**perfectly** 21:2
**period** 8:16 13:5 27:2
**person** 10:21
**personal** 31:11
**ph** 5:14 7:19
**pick** 35:20 36:18
**pierce** 28:7
**pin** 10:21
**place** 3:21 11:10 11:16 24:7
**plan** 7:15,21 8:2,4 8:12 15:3,10
**planning** 39:16
**plaza** 1:16

**please** 5:4
**pllc** 3:19
**plus** 26:18
**pm** 1:20
**point** 10:1,4 16:9
17:9 20:12,15
22:19 24:16 28:2
35:13
**position** 28:16
**positions** 36:8
**possession** 21:7
**pot** 7:12 8:24 9:7
9:10
**potential** 21:7
35:2
**prejudice** 34:14
34:15
**prepared** 33:20
**present** 13:4
**presentation** 19:6
22:3
**preserve** 34:21
**presumably** 33:14
37:2 40:2
**previously** 15:1
**principal** 5:15
24:9
**principle** 23:6
**prior** 22:19
**probably** 5:17
16:20 17:10 24:9
24:12
**problem** 10:12
19:7 20:25 24:10
24:22,22 25:3
27:5 31:8 34:5
**problematic**
14:13
**proceeding** 17:23
17:24
**proceedings** 6:22
42:2 43:4

**process** 8:5,18
9:24 11:25
**professionals**
12:23
**proper** 6:15
**properly** 31:22,23
**properties** 27:16
**property** 5:23 6:2
7:5 9:14,23 10:9
10:11 13:13,16,19
15:10 18:21,22
20:3 21:16 23:17
23:17,22 24:2,6
24:15 25:14,25
26:21 27:10 32:14
34:9,17,18,20,21
39:11,19
**protect** 12:9 27:12
34:18
**protection** 12:6
13:2 21:22 26:8
26:11,17 27:5,12
27:17,23 30:7
31:5 33:13,21,22
34:1 35:8 38:11
40:23
**provide** 7:21
**provided** 12:18
20:6
**provides** 7:22
**pushing** 10:5
**put** 8:17 10:6 11:5
12:5 18:12 28:23
28:25 37:3,10,11
37:23 38:17 40:4
**putting** 28:15

**q**

**question** 13:1
16:1,3 24:11,13
25:12 26:15 27:25
30:17
**quicker** 11:25

**r**

**r** 1:23 3:1 5:1 43:1
**rational** 25:7
**reach** 18:17 30:4
**read** 20:20,20
21:22 24:1
**readable** 10:7
**reading** 13:11
**ready** 10:6
**real** 5:7 20:18
26:3
**really** 6:13 13:7
15:2,9 25:15
28:23 29:5 33:14
**reason** 13:19,25
21:18 24:20 33:15
35:10
**reasonable** 11:8,9
25:7 26:10
**recall** 7:7
**recessed** 30:1
**recognize** 21:3,4
**recognizing** 27:25
**reconvened** 30:1
**record** 43:4
**recording** 6:15
**red** 20:7
**reduced** 34:12
**reflected** 31:22
**regular** 19:20
**related** 17:2 18:15
18:23
**relationship**
10:23,25 18:21,21
**relationships**
16:22
**relied** 2:6
**relief** 5:20 32:3
33:10 37:6 38:8
38:18 41:2
**remember** 37:12
**rent** 13:23 14:5
15:8,11 19:13,21

20:22,24 21:9,9
22:6 23:18 27:8
28:20 31:21
**rental** 16:21 23:16
23:23 26:23
**rented** 21:17
**rents** 15:11 27:20
**reorganization**
26:1
**reply** 13:12 20:13
20:20,23
**reports** 12:20
13:4 31:22
**represented** 7:23
15:1
**representing**
25:10
**represents** 13:21
**request** 31:20
41:8
**requested** 12:18
**requests** 16:24
**require** 36:7
**requirements**
26:4
**requires** 40:24
**residence** 27:19
**resolution** 30:5
**resolve** 9:3,4
37:24
**resolved** 9:6 17:11
**respect** 15:7 40:22
**respectfully** 31:20
**response** 5:19
**responsibility**
19:9
**restart** 11:11
**retention** 12:22
13:10 14:17
**revisit** 30:6
**right** 6:8,11,18
7:19 8:3 10:19
11:20 12:12 13:5

15:17 16:8,13
17:19 19:3 23:8
23:11,24 24:2,24
26:10 27:15 28:5
28:7,13 29:16
30:22 32:23 33:4
33:8,23 35:17,18
36:6,17 39:15,21
41:5,12
**rise** 32:17
**road** 43:17
**roof** 34:20
**rule** 35:24

**s**

**s** 3:1 5:1
**save** 10:10
**savings** 2:4,8 3:12
5:6
**saying** 8:22 17:20
27:4 31:12 32:25
33:2,3
**says** 20:23 27:8,9
27:11
**schedule** 16:5,6
**schedules** 16:3
**scheduling** 16:16
16:25 17:6,21
18:4,22 29:19
32:9 38:9
**second** 29:23 30:2
**section** 26:4
**secured** 19:22
**see** 9:14,23 10:11
11:23,25 13:9
16:13 17:14 18:13
29:10
**seeing** 39:1
**seek** 41:1
**seen** 21:19
**sees** 19:7
**send** 37:1
**sense** 7:6 12:18
25:21 27:3,6

**sent** 12:25
**separate** 21:5
23:21 28:17 40:4
40:6
**serious** 37:4
**serve** 18:6
**serviced** 20:11
**services** 31:11
**set** 25:11 30:19
36:17
**sets** 8:13
**seven** 21:12,15
**sewer** 32:15,17
**shake** 22:17
**share** 25:9
**shareholder** 7:10
7:10
**short** 12:7 13:5
40:22
**showing** 13:7
**side** 8:22 27:18
**sides** 8:17 17:7
**simple** 24:14
**single** 20:18 26:3
26:6
**sit** 35:3
**sitting** 32:4
**situation** 12:8
17:4 18:2 35:2,7
**six** 18:17 21:13,15
22:8,13,23,24
26:24,25
**sizable** 9:7,10
**solace** 9:5
**sold** 15:9 24:16
**solution** 24:14
**solutions** 43:16
**solve** 10:12
**somebody** 28:24
**someone's** 19:24
**somewhat** 14:11
14:17

**son** 6:1 11:11
**soon** 38:1 40:6
**sorry** 7:3
**sort** 12:7
**sounds** 26:5
**source** 13:3 30:11
30:13 35:2
**speak** 22:17
**speaker** 37:15
**speaking** 17:8
**specifically** 8:11
**spilling** 25:23
**stands** 21:16
**start** 12:16,17
**starting** 30:5
**state** 3:20 5:7
18:17 28:17
**stated** 8:10
**statement** 36:7
**states** 1:1 4:1 8:5
**status** 2:1 5:16,21
5:23 7:17,18
11:19 16:8,11
19:6 24:12 36:20
36:21 38:6,13,19
38:20
**stay** 2:6 5:20 6:20
24:15 26:9 32:18
33:5,9,15,23
35:12,19 38:8,10
38:18 40:22 41:2
41:16
**stayed** 7:24 11:22
**step** 8:5,6
**stip** 40:22
**stipulation** 33:21
34:12 41:8
**stop** 29:21
**stops** 17:25
**street** 4:3 28:23
28:25
**stuff** 37:2,10

**styled** 5:23
**subject** 6:2 26:12
**subpoena** 18:6
**substance** 18:10
**substantial** 7:14
**substantially** 13:6
**sue** 13:22
**suggested** 22:4,9
**suggesting** 18:1
33:11,12
**suite** 4:4 43:18
**summarizing** 36:8
**supposed** 9:4
28:18
**sure** 25:8,9 32:12
37:9
**survive** 11:10
**switch** 32:7
**sympathetic** 35:9
**system** 29:4

**t**

**t** 43:1,1
**take** 9:4 16:10
29:9,23 34:4
36:10 40:3
**takes** 26:13 31:21
36:11
**talking** 9:21 18:9
27:2 33:10
**tax** 32:15,16
**taxes** 26:18
**technical** 14:3
**technically** 31:13
**ted** 5:13
**ten** 29:9
**tenant** 15:19,25
16:2 28:21 31:1
**tenants** 13:13
15:23 16:5,6
19:21
**tend** 25:5
**term** 12:7

**terms** 5:22 7:15 14:7

**testimony** 13:14 39:18

**thank** 29:24,25 30:11 31:23 37:20 38:2,4 39:22 40:13 41:11,13,15 41:23

**thanks** 39:7

**thing** 11:12 15:7 19:10 20:8 33:10 36:19 39:3

**things** 11:4 21:10 25:6 31:6

**think** 9:19,22 10:24 11:8 13:15 13:16 15:25 17:9 20:19 23:14 25:5 25:6,21 26:10 27:1,21 29:1,2,4 31:1 34:6 35:6 38:5,14 39:4 41:12

**thinking** 18:5 19:15

**thinks** 26:21

**third** 3:13 12:2

**thought** 13:24 17:7 19:2 30:17

**thousand** 22:7

**three** 7:13 21:13 26:23 27:1

**threw** 17:7

**throwing** 14:15 19:21

**time** 7:3 11:21 18:16 21:20 27:2 28:2 29:13 36:14 37:19,21 38:21

**today** 14:9 17:21 32:5 33:20 36:1 37:7

**token** 28:11 35:6

**told** 11:21 17:15

**toolbox** 25:11

**total** 26:19

**touch** 6:20

**transaction** 31:23

**transcribed** 2:25

**transcript** 13:12 43:3

**transfer** 6:4

**treat** 25:16

**tremendous** 14:21

**trial** 5:11 37:13 37:16

**tried** 20:12

**trigger** 32:17 33:9 33:9

**triggers** 34:22

**trinity** 3:21

**trip** 32:17

**trouble** 18:18 27:24

**troubled** 20:20

**true** 24:12 43:4

**trustee** 4:2 12:15 12:19,25 14:8 19:15,16 21:7 29:6 30:9 41:9,10

**trustee's** 5:12

**try** 18:24 27:21 28:23

**trying** 11:10 12:5

**tunnel** 7:6 11:14 28:4

**turn** 16:5 24:1,2

**two** 8:5,6 23:21 36:3,6,9 37:16

**type** 14:2

**u**

**u.s.** 1:15,25 4:2 5:12 12:15,18,25 14:8 30:9 41:8,10

**understand** 6:25 13:9 15:24 17:8 17:19 18:11 19:18 20:4,8 24:8 31:6 31:19 33:20 35:14 41:17

**understandable** 10:7

**understood** 13:11 29:8

**unfortunately** 9:11 11:14

**unidentified** 37:15

**united** 1:1 4:1

**unpredictability** 25:16

**unusual** 17:3

**uploaded** 41:14

**upscale** 23:17

**urge** 40:5

**uses** 13:16,19

**usually** 17:22

**utilize** 21:1 29:4

**v**

**value** 21:16 23:16 23:22,23 26:23 27:13 34:25

**varick** 4:3

**various** 6:15 8:17 14:5

**vehicles** 21:2

**veil** 28:7

**veritext** 43:16

**victim** 25:19

**view** 10:1,4

**vinay** 7:19

**voluntarily** 28:15

**w**

**wait** 7:1 8:1 20:21

**walk** 21:18

**want** 7:1,20 8:22 8:23 10:4 11:19

16:11 19:20 25:2 27:3 28:22 30:20 30:23 35:9,11 36:2 37:6 38:12 38:25 39:1,9

**wanted** 39:4

**wants** 7:18 10:5 12:9 19:12 40:10

**war** 25:17

**washington** 1:7 5:3,24 30:3

**water** 32:15,16

**way** 14:23 16:13 17:17,17 18:2 25:10 34:19

**ways** 12:16,17 16:17 21:4 28:15 29:2

**we've** 7:2 29:21 31:18 39:5

**week** 36:6

**weeks** 36:7,9

**went** 26:23

**weprin** 3:2 5:14

**willing** 17:16,16 28:6

**window** 8:20,22

**wire** 32:17

**witnesses** 36:8

**work** 10:6 37:25 39:4

**working** 14:8,9

**works** 38:16

**worried** 11:22

**worth** 26:21

**write** 31:15

**writing** 34:12

**x**

**x** 1:3,11

**y**

**yeah** 18:11 25:20 36:23 37:17 40:20 41:21

**year**   22:14,14
  24:16
**years**   18:16,17,18
  39:12
**yesterday**   37:11
**york**   1:2 3:6,15,23
  4:5 24:1